662 So.2d 446 (1995)
STATE of Louisiana
v.
Nicki L. ROLEN.
No. 95-KK-0347.
Supreme Court of Louisiana.
September 15, 1995.
*447 Howard L. Lawrence, Jr., Bossier City, for Applicant.
Richard P. Ieyoub, Attorney General, Paul Carmouche, District Attorney, Loyd K. Thomas, Tommy J. Johnson, Shreveport, for Respondent.
PER CURIAM:[*]
We granted relator's application to resolve the split in the circuit courts of appeal over the question of whether Acts 1993, No. 669, which amended La.R.S. 14:98(F) and enlarged the cleansing period under the statute from five to ten years, violates the Ex Post Facto Clauses of the federal and state constitutions when applied to an offender who committed his last D.W.I. offense not only after the effective date of the amendment, but also more than five years after the commission of his previous D.W.I. offense. Compare State v. Duke, 94-0312 (La.App. 1 Cir. 4/15/94), 635 So.2d 787, writ denied, 94-1285 (La. 9/16/94), 642 So.2d 192 (application of the 1993 amendment barred by the Ex Post Facto Clause); with State v. Moore, 95-00526 (La.App. 3rd Cir. 6/29/95), 663 So.2d 41 (application not barred). In this case, the Second Circuit joined the Third in holding that the 1993 amendment did not constitute an ex post facto application of the law because it did not "punish as a crime an act previously committed which was prescribed or innocent when done, make more burdensome the punishment for a crime after that crime was committed, or deprive the defendant of any defense to a crime that was legally available when the crime was committed." State v. Rolen, 26,933 (La.App. 2nd Cir.9/1/94), 642 So.2d 325 (citing Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)) writ denied, 94-2468 (La. 10/7/94), 644 So.2d 647, writ granted after after remand, 95-0347 (La. 6/23/95), 656 So.2d 1024; see also State v. Hall, 27,015 (La.App. 2nd Cir. 11/17/94), 648 So.2d 1. We agree with the analysis of the Second and Third Circuits under the Ex Post Facto Clause. We also find that the application of the ten-year cleansing period to relator is not otherwise fundamentally unfair. Accordingly, we affirm the ruling below.
The prior D.W.I. convictions used by the state in a repeat offender prosecution under La.R.S. 14:98 are essential matters of proof at trial. State v. Mobley, 592 So.2d 1282 (La.1992); State v. Krause, 405 So.2d 832 (La.1981). The state must therefore negate the cleansing period provided by La. R.S. 14:98(F) as part of the statute's definition of "prior conviction." Acts 1993, No. 669 changed the state's burden in that regard, and greatly expanded the potential bases of repeat offender prosecutions under La.R.S. 14:98, by doubling the statute's former cleansing period from five to 10 years. Subsection F now provides that "a prior conviction shall not include a conviction for [D.W.I.]... if committed more than ten years prior to the commission of the crime for which the defendant is being tried...."
*448 The amendment went into effect on June 21, 1993. Eight months later, on March 27, 1994, relator was arrested for D.W.I. The state charged him formally as a second offender under La.R.S. 14:98 on the basis of his prior D.W.I. conviction on April 3, 1985. Relator filed a motion to quash the bill of information, arguing that the former five-year cleansing period had fully accrued by April, 1990, and that he had thereby acquired a vested right in a complete defense to a second-offender prosecution which 1993 amendment could not lawfully abridge.
The district court granted relator's motion in a judgment subsequently reversed by the Second Circuit when the state sought review. 26,933 (La.App. 2nd Cir. 9/1/94), 642 So.2d 325. This Court denied relator relief from the court of appeal's remand order on grounds that he had an adequate remedy on review in the event of conviction. 94-2468 (La. 10/7/94), 644 So.2d 647. Relator then entered a conditional plea of guilty to D.W.I. second offense in the district court, reserving his right to seek review from the adverse ruling on the motion to quash. State v. Crosby, 338 So.2d 584 (La.1976). The Second Circuit denied review on the basis of its previous ruling that "Act 669 of 1993 punishes conduct occurring after its effective date." 27,413 (La.App. 2nd Cir. 1/12/95), ___ So.2d ___. We then granted relator's application to resolve this important issue.
Art. I, § 10 of the United States Constitution and La. Const. art. I, § 23 prohibit the ex post facto application of the criminal law by the state. For a criminal or penal law to fall within this prohibition, it "must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." Weaver v. Graham, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). "Critical to relief under the Ex Post Facto clause," Weaver observes, "is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Id. (emphasis supplied). The Ex Post Facto Clause therefore assures "that persons have fair notice of potential criminal punishment and will be able to rely for their conduct on the criminal law as it exists at the time of their acts." Prater v. United States Parole Comm'n, 764 F.2d 1230, 1239 (7th Cir.1985).
For purposes of analyzing the ex post facto implications of repeat offender statutes and statutes increasing penalties for future crimes based on past crimes, "the relevant `offense' is the current crime, not the predicate crime." United States v. Arzate-Nunez, 18 F.3d 730, 734 (9th Cir.1994); see also Witte v. United States, ___ U.S. ___, ___, 115 S.Ct. 2199, 2207, 132 L.Ed.2d 351 (1995) ("... consideration of information about the defendant's character and conduct at sentencing does not result in `punishment' for any offense other than the one of which the defendant was convicted"); Nichols v. United States, 511 U.S. ___, ___, 114 S.Ct. 1921, 1927, 128 L.Ed.2d 745 (1994) ("[e]nhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes which are commonplace in state criminal laws, do not change the penalty imposed for the earlier conviction"); Gryger v. Burke, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948) (the enhanced sentence "is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes," but as "a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one"). In State v. Williams, 358 So.2d 943 (La.1978), this Court therefore upheld the validity of La.R.S. 14:95.1, which prohibits possession of a firearm by a convicted felon, although the prior conviction at issue occurred before enactment of the statute. We observed that because the statute "prohibits specified future conduct," and "puts the defendant on notice of the consequences of his contemplated act," it did not "become an ex post facto law because liability was premised upon a first conviction." Id., 358 So.2d at 946 (emphasis in the original).
In this case, the 1993 amendment did not eliminate any defense available under the law existing when relator committed his second D.W.I. offense, the only relevant crime for purposes of analysis under the Ex Post *449 Facto Clause. At the time of his arrest on March 27, 1994, relator had been placed on notice by the state that the definition of "prior conviction" in La.R.S. 14:98 had changed and that he could no longer rely on the former five-year cleansing period to abate the collateral consequences of his prior D.W.I. offense for any future violation of the statute. The Ex Post Facto Clause required no more.
Our decision in State v. Ferrie, 243 La. 416, 144 So.2d 380 (1962), does not compel a different result. Ferrie held that the state remains free to prosecute a defendant according to an enlarged prescriptive period adopted after the commission of the offense but only as long as the former and shorter period has not already fully accrued into a complete defense to the charge. At that point, Ferrie observed, the defendant would acquire a vested right in that defense which the law could not abridge. Id., 144 So.2d at 384. This part of the Ferrie decision rests on sound policy reasons flowing from what Judge Learned Hand called "our instinctive feelings of justice and fair play." Falter v. United States, 23 F.2d 420, 425-26 (2nd Cir.), cert. denied, 277 U.S. 590, 48 S.Ct. 528, 72 L.Ed. 1003 (1928). Statutes of limitations are "designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." Toussie v. United States, 397 U.S. 112, 114-15, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970). Statutes of limitations therefore at least in part implement the constitutional guarantee of a speedy trial. State v. Driever, 347 So.2d 1132 (La.1977). An individual may rely on the statute to disband his witnesses and discard evidence he would otherwise use to defend himself against the state once the time limit has passed with the assurance that the potential criminal consequences flowing from his act have abated. In this context, "[f]or the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance," Judge Hand observed in Falter, "seems to most of us unfair and dishonest." Id., 23 F.2d at 426.
Cleansing periods are, however, purely statutory rules constituting self-imposed restraints on the state's plenary power to define and punish crimes. Due process does not require them and several Louisiana repeat offender statutes do not have them. See State v. Williams, 502 So.2d 1388 (La. 1987) (repeat possessory marijuana offenses under La.R.S. 40:966(D)); State v. Forrest, 439 So.2d 404 (La.1983) (repeat prostitution offenses under La.R.S. 14:82). Enlarging or even eliminating a statutory cleansing period does not require an individual to defend his past acts charged against him, for which he has already been convicted and punished, but to measure his future conduct in light of the legislature's changing perception of significant social problems. In this instance, the societal costs of drunken driving are well documented. See Michigan Dept. of State Police v. Sitz, 496 U.S. 444, 451, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990) ("[n]o one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it"); State v. Beavers, 382 So.2d 943, 944 (La.1980) (mandatory minimum sentence of 10 years at hard labor for a fourth offense D.W.I. "reasonably corresponds to the risk that innocent people will be killed or harmed by drivers convicted of driving while intoxicated on at least four occasions"). In 1992, the legislature began tightening the state's repeat D.W.I. offender law by amending La.R.S. 14:98(F) and changing the definition of "prior conviction" to include out-of-state offenses. Acts 1992, No. 679. The 1993 amendment of subsection F further enlarged the available pool of prior convictions by expanding the cleansing period. The amendments demonstrate the legislature's renewed resolve to combat the problem of drunken driving especially by repeat offenders. Apart from a full governor's pardon under La. Const. art. 4, § 5(E)(1), which absolutely precludes the use of a prior conviction as the basis for enhanced punishment following a subsequent offense, State v. Adams, 355 So.2d 917 (La.1978); State v. Childers, 197 La. 715, 2 So.2d 189 (1941), we know of no other provision in this context "that would require interference with the broad discretion of the legislature in setting up a system of punishment specifically designed *450 to combat certain types of offenses." Forrest, 439 So.2d at 407.
The judgment of the Second Circuit is accordingly affirmed, and this case is remanded to the district court for all further proceedings in accord with the law.
NOTES
[*] Judge Ned E. Doucet, Jr., Court of Appeal, Third Circuit, sitting by assignment in place of Justice James L. Dennis. Calogero, C.J., not on panel. Rule IV, Part 2, Sec. 3.