727 So.2d 1264 (1999)
STATE of Louisiana
v.
Jimmy BRADY, Sr. and George Howell.
No. 97-KA-1095.
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 1999.
Order Granting Rehearing For Limited Purpose March 16, 1999.
*1265 Harry F. Connick, District Attorney, Holli-Herrle-Castillo, Assistant District Attorney, New Orleans, Louisiana, Attorneys for Plaintiff-Appellee State of Louisiana.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, Louisiana, Attorney for Defendants-Appellants Jimmy Brady and George Howell.
Court composed of Judge ROBERT J. KLEES, Judge MOON LANDRIEU and Judge PATRICIA RIVET MURRAY.
KLEES, Judge.
Defendants Jimmie Brady, Sr. and George E. Howell were jointly charged by bill of information on May 18, 1995, with, in count one, possession with intent to distribute heroin, a violation of La. R.S. 40:966(A)(1); in count two, possession with intent to distribute cocaine, a violation of La. R.S. 40:967(A)(1); in count three, possession with intent to distribute codeine, a violation of La. R.S. 40:967(A)(1); and, in count four, possession with intent to distribute alprazolam, a violation of La. R.S. 40:969(A)(1).[1] Defendants were arraigned on May 23, 1995, at which time each pleaded not guilty to all counts. Following trial by a twelve-person jury on December 10, 1998, both defendants were found guilty as to count one, of attempted possession with intent to distribute heroin; as to count two, of attempted possession with intent to distribute cocaine; as to count three, of possession of codeine; and as to count four, of possession of alprazolam. Brady and Howell were adjudicated, respectively, as second and fourth-felony habitual offenders.
Brady was sentenced on count one, as a second-felony habitual offender, to fifty years in the Department of Corrections, without benefit of probation, parole or suspension of sentence; on count two, to ten years in the Department of Corrections; on count three, to five years in the Department of Corrections; and, on count four, to five years in the Department of Corrections, with the sentences in counts three and four to run concurrently. In addition, all sentences were to run concurrently.
Howell was sentenced on count one, as a fourth-felony habitual offender, to life imprisonment without benefit of probation, parole or suspension of sentence; on count two, to ten years in the Department of Corrections; on count three, to five years in the Department of Corrections; and, on count four, to five years in the Department of Corrections, with the sentences in counts three and four *1266 to run concurrently. In addition, all sentences were to run concurrently.
Both defendants filed motions to reconsider the sentences, which were denied by the trial court. Written motions for appeal were filed by each defendant.

FACTS
New Orleans Police Officer Tommy Mercadel testified that on March 23, 1995, he was cruising in the area of the Florida Housing Development, driving an unmarked red van, when he was flagged down by a woman known in the area as "Mom." Officer Mercadel testified that police had received information prior to that date that cocaine and heroin were being sold from the residence, and that Mom would sell hypodermic needles used to inject the drugs. Officer Mercadel exited his vehicle and approached the porch of 2608 Gallier Street where Mom was sitting. She asked him what he wanted, and he replied that he wanted a "twenty-dollar bag." Mom shouted into the open door of the residence, "Eddie, come give this man what he wants." Defendant George Howell walked to the door and asked the officer what he wanted. Officer Mercadel said he wanted a twenty-dollar bag. Howell asked the officer to come inside. Officer Mercadel gave Howell twenty dollars, and Howell walked out of the room, opened a door into the adjoining half of the double residence, and stuck his arm inside. Howell came back to Officer Mercadel and said: "Brady is hooking you up."
Officer Mercadel stepped out of the residence onto the front porch, and motioned to Officer Beaulieu, another plainclothes officer positioned outside, indicating to him that the transaction was going to take place within seconds. Officer Butler came onto the front porch and detained Mom. Officers Mercadel, Beaulieu, Stamp and Carrol entered the residence, and Officer Mercadel grabbed Howell and informed him that they were the police. Officer Mercadel then walked back through the hallway to the door, waiting for defendant Jimmie Brady to come out. Officer Mercadel testified that he suspected the "Brady" that Howell had referred to was defendant Jimmie Brady, whom he had dealt with on a prior occasion. Jimmie Brady then exited the door, folding up a foil packet as he walked. Brady looked up and saw it was Officer Mercadel, and called the officer by his nickname, "Merc," as he dropped the packet into the officer's hand.
Officer Mercadel opened the door from which Brady had come to see if anyone else was in the room. He observed, in plain view, a table with a plate on it containing a white powder, a razor blade, some drinking straws, and some one and one-half to two inch sections of straws which had been heat sealed on each end. Officer Mercadel also noticed several pieces of foil on the table. He observed a boot under the table, which was found to contain U.S. currency. Officer Mercadel saw a loaded nine millimeter Glock semi-automatic handgun in between the armrest and the pillow of a nearby reclining chair. Officer Mercadel identified photographs of the scene, and identified a brownish powder substance, a white powder substance, a piece of aluminum foil containing a white powder substance, sixteen plastic straws containing a white substance, a clear plastic bag containing twenty-seven smaller bags, each containing a white powder substance, a medicine bottle containing ten pieces of a white powder substance, two spoons, each containing a white residue, two razor blades, sixty-two dollars seized from inside of a boot, a pack of straws, a roll of aluminum foil that had been cut up for use in packaging heroin, which was on the table with the drugs and other paraphernalia, and some smaller one-inch squares of aluminum foil. Officer Mercadel testified that the foil packet given to him by Brady was kept separate from the other evidence. Officer Mercadel also identified some mannitol removed from residence, a substance which he said was commonly used to cut cocaine. Officer Mercadel identified defendants Brady and Howell in the courtroom.
On cross-examination, Officer Mercadel testified that there was no evidence that George Howell lived in the residence. He said there was no physical evidence to connect Howell to the crime, and said no narcotics or money were found on Howell's person. Officer Mercadel described the building in question as a double residence, and admitted that Howell had never been in the side where *1267 the narcotics were found. He said Howell only handed the twenty dollars through the door of that side of the residence.
New Orleans Police Department criminalist Officer John F. Palm, Jr. testified that he tested white substances in three plastic bags, finding two to be positive for the presence of heroin and one positive for the presence of cocaine. He also tested the substance in a foil packet contained in one plastic bag, which was positive for the presence of heroin. This packet presumably was the one given to Officer Mercadel by Brady. Officer Palm also said that he found that the white powder contained in seventeen plastic straw packets tested positive for the presence of cocaine, as did the white powder contained in seven pink-colored zip-loc plastic bags. Officer Palm said he tested fourteen white tablets which he found positive for the presence of codeine, and one blue tablet which tested positive for the presence of alprazolam, commonly known as Xanax. The white powder residue in a tablespoon and a teaspoon tested positive for the presence of cocaine. Officer Palm stated that he did not test all seventeen plastic straw packets, all seven small zip-loc plastic bags, or all fourteen white tablets, but only a sample of each. For example, Officer Palm tested four of the plastic straws.
New Orleans Police Officer Wellington Beaulieu testified that he observed Jimmie Brady making some movements in the back of a police vehicle where he had been placed after his arrest. Officer Beaulieu said that when he went to the car, he saw small white pills sitting on the side of the seat. He removed Brady from the vehicle and recovered a plastic bag containing numerous types of pills from Brady's right rear pocket. Officer Beaulieu testified that no money or drugs were seized from George Howell. Officer Beaulieu said he encountered Howell as he and the other officers were first entering the left side of the residence.
Martin Concoll, Jr. testified for the defense, and stated that Jimmie Brady was helping him tow an inoperable car out of a yard when police arrived. He testified that he knew George Howell by the name "Eddie."
Officer Mercadel testified on rebuttal that he knew Martin Concoll and that Concoll had informed him that Jimmie Brady's son might attempt to kill him, Mercadel, and further told him that Brady's wife had asked him to testify that Mercadel had purchased dope from Mom's residence several years ago.
The trial court sentenced each defendant to ten years in the Department of Corrections on their convictions for attempted possession with intent to distribute cocaine as to count two of the information. Under La. R.S. 40:979(A), the penalty for attempted possession with intent to distribute cocaine shall not exceed one-half of the punishment prescribed for the offense, the commission of which was the subject of the attempt. Under La. R.S. 40:967(B)(4), as in effect at the time of the defendants' 1995 arrests, the maximum sentence for possession with intent to distribute cocainewhere the amount of cocaine was less than twenty-eight gramswas imprisonment at hard labor for not more than ten years. Thus, under La. R.S. 40:979(A) and R.S. 40:967(B)(4), the maximum term of imprisonment defendants could have been sentenced to for attempted possession with intent to distribute cocaine was five years at hard labor.
Accordingly, we reverse the defendants' sentences for the convictions as to count two of the information and remanded for resentencing on those counts.

ASSIGNMENT OF ERROR NO. 1
In this first assignment of error, defendant Howell avers that the evidence is insufficient to support his convictions as to counts three and four of the information, for possession of codeine and possession of alprazolam, respectively.
This court set out the standard for reviewing convictions for sufficiency of the evidence in State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-28, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of act could have found the defendant *1268 guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green, supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 (La. 1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
La. R.S. 40:967(C) and La. R.S. 40:969(C) provide, respectively, that it is unlawful for any person to knowingly or intentionally possess a controlled dangerous substance as classified in Schedule II or Schedule IV. Codeine is a controlled dangerous substance classified in Schedule II. Alprazolam is a controlled dangerous substance classified in Schedule IV. See La. R.S. 40:964.
To support a conviction for possession of narcotics, the State must prove that a defendant knowingly possessed narcotics. State v. Chambers, 563 So.2d 579, 580 (La. App. 4th Cir.1990). The State need not prove that the defendant was in actual possession of the narcotics found; constructive possession is sufficient to support conviction. See State v. Trahan, 425 So.2d 1222, 1226 (La.1983); see also State v. Cann, 319 So.2d 396, 397 (La.1975). The mere presence of a defendant in the area where the narcotics were found is insufficient to prove constructive possession. See State v. Collins, 584 So.2d 356, 360 (La. App. 4th Cir.1991); see also Cann, supra at 397.
A person not in physical possession of narcotics may have constructive possession when the drugs are under that person's dominion and control. State v. Jackson, 557 So.2d 1034, 1035 (La.App. 4th Cir. 1990). A person may be deemed to be in joint possession of a drug which is in the physical possession of a companion if he willfully and knowingly shares with the other the right to control it. State v. Smith, 257 La. 1109, 245 So.2d 327, 329 (La.1971). Determination of whether a defendant had constructive possession depends on the circumstances of each case. See Cann, supra at 399-400. Among the factors to consider in determining whether the defendant exercised dominion and control sufficient to constitute constructive possession are whether the defendant knew that illegal drugs were present in the area, the defendant's relationship to the person in actual possession of the drugs, whether there is evidence of recent drug use, the defendant's proximity to the drugs, and any evidence that the area is frequented by drug users. See State v. Pollard, 93-1960, p. 13 (La.App. 4th Cir.7/14/96), 640 So.2d 882, 888.
State v. Allen, 96-0138, pp. 4-5 (La.App. 4 Cir. 12/27/96), 686 So.2d 1017, 1020.
In State v. Winters, 612 So.2d 259 (La.App. 4 Cir.1992), the defendant was convicted of possession of cocaine with intent to distribute. *1269 Police observed the defendant standing about twenty feet from another individual. A man rode up on a bicycle, spoke to the defendant, and gave him some currency. The defendant pointed to the other individual, who walked over to a fire hydrant and picked up a brown paper bag. That individual removed a small object from the bag and gave it to the bicyclist. The officers subsequently arrested both individuals and recovered the bag, which contained three small plastic bags of white powder which proved to be cocaine. $525.00 in cash was found in the defendant's pocket. On appeal, the defendant argued that the evidence was insufficient to prove that he possessed the cocaine. This court considered the same criteria set out in Allen, supra, concluded that the defendant and the other individual were working as a team selling cocaine, and found that the defendant had constructive possession of the cocaine.
In State v. Harris, 93-0416 (La.App. 4 Cir. 3/29/94), 635 So.2d 389, the defendant was convicted of possession of cocaine with intent to distribute. Acting on a tip that drugs were being sold out of a particular apartment, police sent a confidential informant to make a controlled buy from the occupant of the apartment. Police subsequently observed six instances where a car would drive up to the apartment building breezeway, an occupant would exit the vehicle, speak with the defendant, who was on a stairway approximately thirty to forty feet from the door of the apartment, and then walk with the defendant into a hallway. Minutes later, the defendant and the visitor would reappear, and the visitor would leave. Police could not see the door to the apartment. Police secured a search warrant for the apartment. They found eight individually packaged rocks of crack cocaine in a matchbox lying on the ground next to the door to the apartment, and a few rocks inside of the apartment, along with paraphernalia. Police arrested the defendant and the two occupants of the apartment. The defendant claimed he had been sitting in the stairway of the apartment building waiting for his sister, who lived in the complex, to return, and presented the corroborating testimony of the two women who had been arrested inside of the apartment. On appeal, the defendant argued that the evidence was insufficient to prove that he had possession of any of the cocaine. This court considered the same criteria set out in Allen, and found the evidence was sufficient to prove possession with intent to distribute.
The Louisiana Supreme Court subsequently reversed, finding that the State had not placed the defendant inside of the apartment at any time that night, or otherwise established his relationship with the occupant, who admitted she sold drugs, but denied knowing the defendant on anything more than a casual basis. The court found that "a rational factfinder could only speculate that the defendant exercised with [the apartment occupant] dominion and control over the twelve rocks of cocaine recovered by the police." State v. Harris, 94-0970, p. 5 (La.12/8/94), 647 So.2d 337, 339.
In the instant case, the tablets of codeine and the single tablet of alprazolam were apparently recovered from the rear of the police vehicle where defendant Brady had been placed after his arrest and/or from his person after being removed from that police vehicle. The sequence of events was that Moms flagged down Officer Mercadel. Officer Mercadel walked up to Moms, she asked him what he wanted, and he said a twenty-dollar bag. She called Howell, who asked the officer what he wanted, and then took the twenty dollars from him, all while inside of one-half of the double residence. Howell walked out of that side of the residence, to the door of the other half of the residence, and handed the twenty dollars to someone insidepresumably Brady. It must be presumed that Howell also informed Brady what Officer Mercadel wanteda twenty-dollar bag. Howell then informed Officer Mercadel that defendant Brady would take care of him, and defendant Brady subsequently walked out of his residence and handed Officer Mercadel the packet of heroin. Brady was taken into custody, frisked for weapons, and placed in the rear of a police unit. Officer Mercadel saw Brady doing something in the rear of the police unit, and discovered pills on the seat next to Brady. Officer Mercadel then recovered a plastic bag containing more pills from Brady's *1270 rear pocket. There was no testimony that any pills were recovered from inside of Brady's residence, assuming it was Brady's residence.
The issue is whether Howell can be charged with constructive possession of the pills that were in Brady's pocket. Viewing all the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Howell was a principal to Brady's sale of heroin to Officer Mercadel, that Howell was acting in concert with Brady in distributing heroin to Officer Mercadel, and thus, that Howell had constructive possession of the heroin. However, it does not necessarily follow that it would be a proper inference from Howell's actions that he was acting in concert with Brady to sell pills that Brady had on his person. Brady had no heroin on his person and was not selling heroin or cocaine from a stash on his person. He was selling heroin and cocaine from his residence, where those drugs were in plain view when police entered. Officer Mercadel testified that police had received information that heroin and cocaine were being sold from the residence, not codeine and alprazolam. The pills were on Brady's person, where they were not even detected by police when Brady was frisked for weapons and contraband prior to his being placed in the rear of the police unit. Viewing the evidence in a light most favorable to the prosecution, it cannot be said that any rational trier of fact could have found beyond a reasonable doubt that Howell had constructive possession of the pills secreted on Brady's person. Such an inference would be too speculative.
Accordingly, Howell's convictions and sentences for possession of codeine and alprazolam are reversed.

ASSIGNMENT OF ERROR NO. 2
By this assignment of error, defendant Howell argues that the trial court erred in using the cleansing period of La. R.S. 15:529.1 in effect at the time of the instant offenses, rather than the cleansing period in effect at the time of the predicate crime.
Howell was adjudicated a fourth felony offender based on predicate convictions in 1981, 1984, and 1993. La. R.S. 15:529.1(C) provided in 1995, at the time of the instant offenses, that the habitual offender statute would not be applicable in cases where more than seven years had elapsed since the expiration of the maximum sentence of the previous conviction and the present felony offense. Howell argued at sentencing that the five year prescriptive period of La. R.S. 15:529.1(C), which was in effect at the time of defendants' previous convictions, should have been applied. Howell avers that the five year cleansing period had elapsed for his 1981 and 1984 convictions, and, as to those convictions, the prescriptive period could not have been extended.
In State v. Rolen, 95-0347 (La.9/15/95), 662 So.2d 446, the defendant was convicted of his second offense of operating a motor vehicle while intoxicated, a violation of La. R.S. 14:98. At the time of Rolen's conviction, La. R.S. 14:98(F) provided an enhanced sentence for a second offense, provided that ten years had not elapsed from the commission of the previous offense. At the time of Rolen's first conviction, that statute provided for a five-year prescriptive period. Subsequent to the expiration of that five-year period following Rolen's conviction, La. R.S. 14:98(F) was amended to extend the prescriptive period to ten years. The Louisiana Supreme Court held that the application of the ten-year period was not barred by the ex post facto clauses of the U.S. and Louisiana constitutions, nor was it otherwise fundamentally unfair. The court stated:
Statutes of limitation are "designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." Statutes of limitations therefore at least in part implement the constitutional guarantee of a speedy trial. An individual may rely on the statute to disband his witnesses and discard evidence he would otherwise use to defend himself against the state once the time limit has passed with assurance that the potential criminal consequences flowing from his act have abated. In this context, "[f]or the state to assure a man that he has *1271 become safe from its pursuit, and thereafter to withdraw its assurance," Juge Hand observed in Falter [v. United States, 23 F.2d 420, 425-26 (2nd Cir.), cert. denied, 277 U.S. 590, 48 S.Ct. 528, 72 L.Ed. 1003 (1928)],"seems to most of us unfair and dishonest."
Cleansing periods are, however, purely statutory rules constituting self-imposed restraints on the state's plenary power to define and punish crimes. Due process does not require them and several Louisiana repeat offender statutes do not have them. Enlarging or even eliminating a statutory cleansing period does not require an individual to defend his past acts charged against him, for which he has already been convicted and punished, but to measure his future conduct in light of the legislature's changing perception of significant social problems.... Apart from a full governor's pardon under La. Const. art. 4, § 5(E)(1), which absolutely precludes the use of a prior conviction as the basis for enhanced punishment following a subsequent offense, we know of no other provision in this context "that would require interference with the broad discretion of the legislature in setting up a system of punishment specifically designed to combat certain types of offenses." (citations omitted).
95-0347 at pp. 5-6, 662 So.2d at 449-50.
In State v. Boykin, 29,141 (La.App. 2 Cir. 1/31/97), 688 So.2d 1250, the court held that the applicability of the seven-year cleansing period of La. R.S. 15:529.1(C), as amended in 1994, was applicable to a 1987 felony conviction, even though the cleansing period at the time of the first conviction was five years. The court applied the reasoning in Rolen, finding that the application of the extended cleansing period was not an ex post facto application of law, nor was it fundamentally unfair when applied to the defendant.
In State v. Brinson, 97-1471 (La.App. 4 Cir. 9/3/97), 699 So.2d 510, writ denied, 97-2452 (La.4/9/98), 717 So.2d 1137, the defendant was convicted of a felony in 1984. The defendant committed his second felony in 1996. After the 1996 conviction, the State charged the defendant as a second felony habitual offender. The trial court quashed the habitual offender information on the grounds that the five-year cleansing period of La. R.S. 15:529.1, in effect at the time of the earlier conviction, had elapsed, and the application of the amended ten-year cleansing period violated the ex post facto clauses of the U.S. and Louisiana constitutions. This court cited Rolen, finding no violation of ex post facto by the application of the extended cleansing period of amended La. R.S. 15:529.1(C), and stating:
The 1995 amendment to the statutory cleansing period did not eliminate any defense available under the law existing when the defendant committed his second offense in 1996, the only relevant crime for purposes of this analysis. At the time of his arrest in 1996 he had been placed on notice by the state that the cleansing period had been changed and he could no longer rely on the former five year cleansing period which was applicable in 1984 at the time of his first crime.
Thus, this court has applied the reasoning in Rolen to the legislature's extending of the cleansing period from seven to ten years in 1995.[2]
Defendant distinguishes Rolen from habitual offender proceedings on the ground that, in prosecutions for operating a motor vehicle while intoxicated, the State has the burden of proving that the prior guilty plea was freely and voluntarily given, that the defendant was properly Boykinized, etc. Defendant submits that, in habitual offender proceedings, once the State proves the existence of the prior guilty plea, and proves that the defendant was represented by counsel when the plea was taken, the burden shifts to the defendant to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Thus, defendant avers, the State is relieved of the burden proving that the prior guilty pleas were freely and voluntarily given, *1272 that the defendant was properly Boykinized, etc. Citing State v. Shelton, 621 So.2d 769 (La.1993).
Defendant infers that the policy behind statutes of limitations should bar his having to attempt to gather evidence relating to his guilty pleas that he may have discarded due to his reliance on the five-year cleansing period in effect at the time of his 1981 and 1984 guilty pleas. He infers that he was assured by the existence of that five-year cleansing period that the potential criminal consequences flowing from his acts had abated, and further infers that the basic facts may have become obscured by the passage of time.
Even assuming defendant is correct in his statement of the burden of proof in second or subsequent D.W.I. cases versus habitual offender cases, the defendant offers no evidence that he was prejudiced in defending against the bill of information charging him as a habitual offender. That is, there is no indication that he was prevented from marshalling evidence to rebut the presumption of regularity in his prior guilty pleas due to any reliance by him on the fact that the five-year cleansing period was applicable. There is no showing that the application of the seven-year cleansing period rather than the five-year period resulted in the facts surrounding defendant's prior guilty pleas becoming "obscured by the passage of time." It has not been shown that defendant disbanded his witnesses and discarded evidence he otherwise would have used to defend himself against the habitual offender bill of information, due to his belief that the five-year cleansing period was applicable.
The application of the seven-year cleansing period is not the application of an ex post facto law, nor is such application otherwise fundamentally unfair to defendant.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 3
By this third assignment of error defendant Jimmie Brady argues that the trial court erred in imposing an excessive sentence upon him.
As previously stated, Brady was sentenced on count one, for attempted possession with intent to distribute heroin, as a second felony habitual offender, to fifty years in the Department of Corrections, without benefit of probation, parole or suspension of sentence; on count two, for attempted possession with intent to distribute cocaine, to ten years in the Department of Corrections; on count three, for possession of codeine, to five years in the Department of Corrections; and on count four, for possession of alprazolam, to five years in the Department of Corrections, with the sentences in counts three and four to run concurrently. In addition, all sentences were to run concurrently.
Because all of the sentences were to run concurrently, Brady essentially received a fifty-year sentence. Pursuant to La. R.S. 15:529.1(A)(2)(a), the sentencing range in 1995 for a second felony habitual offender was from not less than one-half to not more than twice the longest term under La. R.S. 40:979(B). La. R.S. 40:979(B) provided that any person who attempts to possess with intent to distribute a narcotic drug shall be imprisoned at hard labor for not less than eight nor more than fifty years. Thus, the sentencing range for the count on which Brady was charged as second-felony habitual offender, attempted possession of heroin, a narcotic drug, with intent to distribute, was from twenty-five to one hundred years. The fifty-year sentence received by Brady on this count was one half of the maximum possible sentence, twice the minimum.
Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless and needless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Lobato, 603 So.2d 739 (La.1992); State v. Telesee[Telsee], 425 So.2d 1251 (La.1983).
State v. Francis, 96-2389, p. 6 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461.
*1273 Defendant Jimmie Brady's criminal record consists of eleven felony arrests, with three convictions, six misdemeanor arrests, with two convictions, two municipal arrests, with no convictions, and six traffic arrests, with no convictions. In 1975, Brady pleaded guilty to manslaughter and received a sentence of seven years at hard labor. In 1980, Brady pleaded guilty to possession of pentazocine and received a sentence of two years at hard labor. The predicate offense in the instant case is Brady's 1993 conviction for simple burglary.
Defendant Brady is classified as a career criminal. Previous sentences have failed to deter him from pursuing a life of crime. The record does not show that his sentence of one-half of the maximum he could have received as a second-felony habitual offender is nothing more than the purposeless and needless imposition of pain and suffering, is grossly out of proportion to the severity of the crime, or makes no measurable contribution to acceptable goals of punishment.
There is no merit to this assignment of error.
For the foregoing reasons, as to defendant Jimmie Brady, his convictions as to all four counts are hereby affirmed; his sentences as to counts one, three, and four are hereby affirmed; and his sentence as to count two is reversed and the case remanded for resentencing as to count two.
As to defendant George Howell his convictions as to counts one and two are hereby affirmed; his sentence as to count one is hereby affirmed; his sentence as to count two is reversed and the case remanded for resentencing as to count two; and his convictions and sentences as to counts three and four are hereby reversed.
AS TO DEFENDANT JIMMIE BRADY: CONVICTIONS AS TO ALL FOUR COUNTS ARE AFFIRMED. SENTENCES AS TO COUNTS ONE, THREE AND FOUR ARE AFFIRMED. SENTENCE AS TO COUNT TWO IS REVERSED AND REMANDED FOR RESENTENCING.
AS TO DEFENDANT GEORGE HOWELL: CONVICTIONS AS TO COUNTS ONE AND TWO ARE HEREBY AFFIRMED. SENTENCE AS TO COUNT ONE AFFIRMED. SENTENCE AS TO COUNT TWO IS REVERSED AND REMANDED FOR RESENTENCING CONVICTIONS AND SENTENCES AS TO COUNTS THREE AND FOUR ARE REVERSED.

LIMITED REHEARING GRANTED
We grant the State's application for rehearing for the following limited purpose:
In our original opinion, we noted an error patent on the face of the record, and we therefore reversed defendant's sentences on count two and remanded for resentencing.
However, on further review, we find that La. R.S. 40:967(B)(4) as previously relied upon is not applicable to the instant case, and the sentence imposed was not illegal. We erred in determining otherwise.
In count two of the information, defendants were convicted of attempted possession with intent to distribute cocaine. At the time of their arrests in 1995, La. R.S. 40:967(B)(1) provided the following penalty provision:
(1) A substance classified in Schedule II which is a narcotic drug, or which is an amphetamine or methamphetamine, shall be sentenced to a term of imprisonment at hard labor for not less than five years nor more than thirty years; and may, in addition, be sentenced to pay a fine of not more than fifty thousand dollars.
Cocaine is included as a "narcotic drug" in La. R.S. 40:961(26), and 40:967(B)(1) applies to the facts of this case. The ten year sentence imposed by the trial judge is therefore legal.
Accordingly, we grant a limited rehearing to alter our original opinion to provide that the trial court's sentences of defendants on count two are affirmed. In all other respects, the original opinion remains unchanged.
Further, defendant Brady's application for rehearing is denied. His claim is more appropriately *1274 raised in a post-conviction application.
NOTES
[1] In the same bill of information, Irene Thompson was charged with the same offenses. Thompson was not tried with Brady and Howell and is not an appellant in this appeal. In addition to the counts set forth, Brady and Howell were each charged in the sixth and fifth counts of the information, respectively, with possession of a firearm by a convicted felon. These firearm charges were eventually nolle prosequied.
[2] It is unclear whether the cleansing period for the predicate felony in Brinson had elapsed at the time of the amendments extending the cleansing period. However, the cleansing period had elapsed in Rolen.