965 So.2d 971 (2007)
STATE of Louisiana, Appellee
v.
Quierza LEWIS, Appellant.
No. 42,365-KA.
Court of Appeal of Louisiana, Second Circuit.
September 19, 2007.
*973 Kenota P. Johnson, Louisiana Appellate Project, for Appellant.
J. Schuyler Marvin, District Attorney, John Michael Lawrence, C. Sherburne Sentell, III, Assistant District Attorneys, for Appellee.
Before WILLIAMS, MOORE and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal arises from the 26th Judicial District Court, Parish of Webster, State of Louisiana, where the defendant, Quierza Lewis, was convicted of possession of a Schedule II controlled dangerous substance, namely cocaine, in an amount in excess of 28 grams but less than 200 grams, a violation of La. R.S. 40:967(F)(1)(a). Ultimately, Lewis was adjudicated as a habitual offender and was sentenced to life imprisonment. Lewis now appeals. For the following reasons, Lewis's conviction and sentence are affirmed.

FACTS
On February 13, 2005, Sergeant Willie Evans of the Webster Parish Sheriff's Office and Lieutenant Marvin Garrett of the Minden Police Department set up surveillance at 212 Chrysler Street, Minden, Louisiana, following a report from a confidential informant regarding illegal drug activity involving the defendant, Quierza Lewis, and Kelly Combs, Lewis's cousin. When law enforcement arrived, they observed Combs and Lewis leaving the residence. Combs got into his vehicle and Lewis sat in the passenger seat of a black Grand Am, where his girlfriend, Bridget Sumlin, was waiting in the driver's seat. A few minutes later, Lewis got out of the Grand Am and into the driver's seat of Combs's vehicle. The two vehicles then drove a couple of blocks to Lewis's mother's home located at 217 Main Street. Officers, in a marked patrol car, pulled directly behind Combs's vehicle. Lewis and Combs exited the vehicle and went inside the residence, while Sumlin remained in the Grand Am outside. After police officers pursued the two into the residence and detained them, the officers made contact with Sumlin who turned over a black skull cap containing a silver pair of digital scales commonly used to weigh narcotics, razor blades, and a box of "baggies" inside. While waiting on a search warrant for Sumlin's car, police officers returned to Marshall's house where the officers discovered several items consistent in the manufacturing of crack cocaine, including a Pyrex dish, a used box of baking soda, a whisk, a plastic bag containing cocaine, *974 and a notebook containing calculations. After the search warrant for Sumlin's vehicle was obtained, officers seized a plastic bag containing cocaine inside Sumlin's purse. The crime lab confirmed that the substance was cocaine and determined the weight to be 349.8 grams.
Combs, Sumlin, and Lewis were all placed under arrest and charged with possession of cocaine in excess of 200 grams but less than 400 grams, a violation of La. R.S. 40:967. After a jury trial, Lewis was convicted of possession of a Schedule II CDS, in an amount more than 28 grams but less than 200 grams. He was originally sentenced to 20 years at hard labor and fined $50,000.00. Later, the state filed a multiple offender bill under a new docket number. After the habitual offender hearing, Lewis was adjudicated a third felony offender, the original sentence was vacated and Lewis was given a life sentence. This appeal ensued.

LAW AND DISCUSSION
Lewis argues that the evidence presented by the state failed to prove beyond a reasonable doubt that he possessed crack cocaine, nor did the evidence prove that he had the specific intent to distribute crack cocaine. We disagree.
The standard for evaluating sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find that the state proved all elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Washington, 597 So.2d 1084 (La.App. 2d Cir.1992). This standard was legislatively adopted in La. C. Cr. P. art 821 and applies to cases involving direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983). When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.09/25/98), 719 So.2d 610, writ denied, 1998-2723 (La.02/05/99), 737 So.2d 747. It is always the function of the trier of fact to assess credibility and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993); State v. Lee, 32,272 (La.App.2d Cir.08/18/99) 742 So.2d 651, writ denied, 1999-2730 (La.03/17/00), 756 So.2d 326.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a judge or jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.08/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
In the instant case, the elements of the offense are that: (1) the defendant knowingly or intentionally possessed cocaine; and (2) the amount of cocaine possessed was between 28 and 200 grams. La. R.S. 40:967(F)(1)(a). One need not actually possess the controlled dangerous substance to violate the prohibition against possession. Constructive possession is sufficient. A person may be in constructive possession of a drug even though it is not in his physical custody if it is subject to his dominion and control. *975 State v. Sweeney, 443 So.2d 522 (La.1983). Also, a person can have constructive possession if he jointly possesses the drug with a companion, and he willfully and knowingly shares with a companion the right to control it. State v. Trahan, 425 So.2d 1222 (La.1983). The determination of whether there is possession sufficient to convict depends on facts peculiar to each case. Id.; State v. Spates, 588 So.2d 398 (La.App. 2d Cir.1991).
The state need not prove actual possession or actual dominion and control over a controlled dangerous substance when the state proves that a defendant is a principal in the crime under La. R.S. 14:24. State v. Green, 476 So.2d 859 (La.App. 2d Cir. 1985), writ denied, 481 So.2d 627 (La. 1986). Under La. R.S. 14:24, all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission or directly or indirectly counsel or procure another to commit the crime, are principals.
In the case at hand, Sergeant Willie Evans testified that he and Lieutenant Marvin Garrett set up surveillance at the residence of Bruce Marshall after receiving information from a reliable and confidential informant involving illegal drug activity. He further testified that upon arriving at the residence, he observed a vehicle parked in the driveway and saw Lewis and Combs exit the residence 45 minutes later. Sergeant Evans testified that Combs walked over to his own vehicle and sat in the passenger seat, while Lewis walked over to a black Grand Am and climbed into the passenger seat. Lewis's girlfriend, Bridget Sumlin was in the driver's seat of the Grand Am.
Thereafter, Sgt. Evans observed Lewis get out of the Grand Am and get into the driver's seat of Combs's vehicle. Lewis proceeded to drive to his mother's house while Sumlin followed behind in her vehicle. Sergeant Evans testified that Officer Heath Balkom, in a marked patrol car, pulled directly behind Combs's vehicle in an apparent attempt to stop the car. Sergeant Evans stated that Lewis and Combs exited the vehicle in a hurried manner and went inside the residence. Sergeant Evans also testified that it appeared as though the subjects were trying to avoid contact with the police officers. He explained that the officers immediately went into the residence and detained Combs and Lewis for "further investigation."
After Combs and Lewis were detained, Sgt. Evans then went back outside and questioned Sumlin. Sumlin indicated that Lewis had placed a black skull cap inside her vehicle. Sergeant Evans seized the skull cap and discovered a silver pair of digital scales, razor blades, and a box of "baggies" inside. Sergeant Evans stated that when he asked Sumlin if there was anything else in the vehicle, Sumlin asked if he had a search warrant. She was detained while the officers obtained a search warrant.
In the meantime, Sgt. Evans explained that he and Lt. Garrett drove to Marshall's house and after being asked to search his residence, Marshall gave his consent. Sergeant Evans discovered several items consistent with the manufacturing of crack cocaine, including a Pyrex dish, a used box of baking soda, a whisk, a plastic bag containing cocaine, and a notebook containing calculations. Crack cocaine residue was also found on the refrigerator. The officers seized the evidence and proceeded to the sheriff's office to obtain a search warrant for Sumlin's car. After obtaining a search warrant for Sumlin's car, Sgt. Evans testified that he retrieved a plastic bag containing cocaine which the crime lab *976 verified and determined the weight to be 349.8 grams.
Bruce Marshall corroborated the information obtained from the informant during his testimony at trial. He testified that Lewis called and asked if he and Combs could cook some cocaine at his house, and that Lewis offered to pay him money in exchange. He testified that he saw Lewis walk to Sumlin's car after the cocaine had been cooked, but he could not recall seeing Lewis with anything.
Bridget Sumlin also testified at trial. She stated that on the previous day, she and her friend Shameka Moore followed Combs and Lewis to Texas. Lewis and Combs rode together in the same vehicle while Sumlin and Shameka followed behind in her car. Sumlin explained that Lewis did not tell her the reason for the trip to Texas, and she did not question him about it. Once they arrived in Dallas, Sumlin testified they met up with one of Lewis's friends who led them to a house. Sumlin stated that she and Shameka remained at the house while Lewis and Combs left with their friend. When Lewis returned, Sumlin stated that he handed her a brown paper bag which she placed in the glove compartment.
Sumlin testified that once they were back in Minden, Lewis removed the bag from her vehicle. The following day, Lewis called her and asked for a ride to Marshall's residence. According to Sumlin, Lewis called again later that day with instructions to retrieve the brown paper bag from his mother's house and to bring it to Marshall's residence where he was located. Sumlin testified that once she arrived at Marshall's house, Lewis came outside and placed a zip-lock bag containing crack cocaine inside her car. He also placed a silver scale and a black skull cap inside her vehicle. Thereafter, Lewis told her to meet him at his mother's house. Lewis and Combs followed behind her in another car. She testified that once they arrived at the residence, the police arrived.
After a thorough review of the record, we find that the evidence was sufficient to support Lewis's conviction. In short, the facts establish that Quierza Lewis traveled to Dallas to obtain the cocaine, used Bridget Sumlin to transport the cocaine, cooked the cocaine at Bruce Marshall's house, and was a principal in this case. Lewis aided and abetted in the commission of the offense and directly counseled and procured another, Sumlin, to commit the crime. Sumlin, for the most part, acted as a courier on his behalf so that Lewis would never be caught with the narcotics in his possession. Further, Lewis gave instructions to Sumlin regarding the transportation of the drugs and closely monitored Sumlin's movement when she had actual possession of the drugs. At all times, Lewis controlled how and when the drugs would be transported from one place to another.
Testimony was also presented that Lewis tried to distance himself from the narcotics when the police arrived at his mother's residence. An attempt to avoid apprehension indicates consciousness of guilt, and therefore, is one of the circumstances from which a juror may infer guilt. State v. Davies, 350 So.2d 586 (La.1977). Although Lewis did not have actual possession of the drugs, the weight of the evidence establishes that Lewis did, however, have constructive possession. Viewed in the light most favorable to the prosecution, the evidence was sufficient for the jury to conclude beyond a reasonable doubt that Lewis was guilty of possession of cocaine.
Additionally on this appeal, Lewis assigned as error that the 20-year sentence he originally received was excessive. *977 However, since this sentence has been vacated, any discussion of an excessive sentence based on the 20-year sentence is pretermitted as it is moot. At the time of this opinion, the life sentence Lewis received after being adjudicated a third felony offender had not been appealed and is therefore not before us on this instant appeal.

CONCLUSION
For the foregoing reasons, we affirm the conviction and sentence of Quierza Lewis.
AFFIRMED.