COOKS, J.,
dissents.
hT.H., a sixteen-year-old, was adjudicated a delinquent and found guilty of theft of an item valued at $75.78, a violation of La. R.S. 14:67. The trial court sentenced him to six months with the Office of Juvenile Justice, suspended the sentence, and placed him on active probation for a period of six months. The court also ordered T.H. to complete forty hours community service. T.H. appeals asserting the evidence was insufficient to support the conviction. The majority affirms the adjudication but would vacate the disposition and remand for resentencing. For the reasons stated below I disagree with the majority’s decision.
Detective Tracy Gerard (Gerard) testified he was employed by the Lafayette Parish Sheriffs Office for nine years. He also worked as a security guard at Wal-Mart located on 1229 Northwest Evangeline Thruway. Gerard was working with Rachelle Hebert (Hebert), Asset Protection Manager for Wal-Mart, in the security office. While watching closed circuit television of the store from the security office, Hebert pointed out to Gerard two individuals in the shoe aisle, later identified as Ms. Charles and T.H.
In State v. Bivens, 2011-156, p. 4-5 (La. App. 3 Cir. 10/5/11), 74 So.3d 782, 788, writ denied 2011-2494 (La.3/30/12), 85 So.3d 115, this court explained:
There is sufficient evidence for conviction if the appellate court determines that ‘the evidence, viewed in the light *933 most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable Indoubt.’ State v. Hobley, 98-2460, p. 33 (La.12/15/99), 752 So.2d 771, 790, cert. denied, 531 U.S. 839, 121 S.Ct. 102, 148 L.Ed.2d 61 (2000).
Further, when the conviction is based on circumstantial evidence, La. R.S. 15:438 sets forth the rule that ‘assuming every fact to be proved that the evidence tends to prove, in order to convict, [the circumstantial evidence] must exclude every reasonable hypothesis of innocence.’ However, La.R.S. 15:438 does not establish a stricter standard of review than the more general rational juror’s reasonable doubt formula; rather it serves as a helpful evidentiary guide for jurors when evaluating circumstantial evidence.
State v. Major, 03-3522, p. 6 (La.12/1/04), 888 So.2d 798, 801. (citations omitted)
In addition to assessing the circumstantial evidence in light of the direct evidence, and vice versa, the trier of fact must decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing inferences should be resolved, reconciled or compromised; and the weight and effect to be given to each permissible inference. From facts found from direct evidence and inferred from circumstantial evidence, the trier of fact should proceed, keeping in mind the relative strength and weakness of each inference and finding, to decide the ultimate question of whether this body of preliminary facts excludes every reasonable hypothesis of innocence. State v. Chism, 436 So.2d 464, 469 (La.1983).
In this case, there is an important discrepancy between Detective Gerard’s testimony and Hebert’s testimony regarding what each observed simultaneously on the closed circuit video. The Detective working off-duty testified that T.H. was looking the other direction and did not see Ms. Charles place the swimsuit in her purse nor did he observe T.H. see Ms. Charles place anything in her purse. Both state’s witnesses testified that T.H. was not with Ms. Charles when she passed the registers without paying for certain items including the swim shorts picked out by T.H.
The State did not introduce into evidence the swim shorts T.H. is accused of stealing, nor did it introduce into evidence Ms. Charles’ purse allegedly used to | Ssecret items to avoid paying for them, and it did not produce the video surveillance tape referred to by Hebert and Gerard in their testimony. There is no evidence or testimony to the effect that the video tape was either lost or destroyed. It simply was not produced despite T.H.’s timely request for production of that evidence. The only way to know which of the two versions of the observations of T.H.’s activities is correct would be to view the video surveillance tape which was not produced by the State. Without it, T.H.’s un-rebutted testimony, corroborated by Detective Gerard’s testimony, establishes a reasonable hypothesis of innocence which forecloses the possibility of a valid conviction beyond a reasonable doubt.
The majority agrees that this is not a question of credibility of witnesses. Viewing the same events on closed circuit TV, each witness gave a different but equally credible version of what they saw. Hebert made inferences from what she observed and characterized T.H.’s behavior as suspicious, describing him as a lookout in the situation, but the Detective admits on cross examination that it can only be said *934 that T.H. was looking away from Ms. Charles when she secreted the alleged swim shorts in her purse. This difference in testimony is not a question of credibility and I am unwilling to make the same “inference” as Ms. Hebert made as it is based solely on her personal predilections. The majority should not base a conviction on the personal inferences and predilections of an interested witness. The Detective’s testimony substantiates T.H.’s testimony that he did not see Ms. Charles place the alleged swim suit in her purse and substantiates his testimony that he was not with Ms. Charles when she went through the checkout register without paying for the shorts she had secreted in her purse.
T.H. was convicted of a violation of La.R.S. 14:67. In State v. Rabalais, 99-623, p. 6 (La.App. 3 Cir. 1/26/00), 759 So.2d 836, 840 (emphasis added) this court explained in pertinent part:
Theft is defined in La.R.S. 14:67 as follows:
Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representation. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
The Louisiana Supreme Court expressed in State v. Victor, 368 So.2d 711, 713 (La.1979), there are three essential elements of the crime of theft which must be proved by the prosecution beyond a reasonable doubt:
1. The “misappropriation or taking of anything of value which belongs to another,”
2. Either “without the consent of the other ... or by means of fraudulent conduct,”
3.With “intent to deprive the other permanently” of the object of the taking or misappropriation.
In State v. Brooks, 00-106, p. 7 (La.App. 5 Cir. 9/26/00), 769 So.2d 1242, 1246 (footnotes omitted) (emphasis added) the court explained in pertinent part the rule by which to determine whether one can be convicted as a principal to a criminal offense:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
This rule has important qualifications. Only those persons who knowingly participate in the planning or execution of a crime are principals. Mere presence at the scene is not enough to “concern” an individual in the crime. All persons “concerned” in the commission of an offense, either directly or indirectly, are principals in the crime, |Band culpable according to the mental state they possess at the time of the offense.
In State v. Victor, 368 So.2d 711, 714-15 (La.1979), the court explained:
The factual issue of whether there is a “taking” for purposes of a theft concerns whether the offender exerts control over the object adverse to or usurpatory of the owner’s dominion.
For instance, under usual circumstances the ordinary shopper does not disturb the owner’s dominion by handling goods displayed for sale. The mere fact that a customer has removed a large item from its package, in order to inspect it, will not ordinarily be any evidence of theft. In this instance, no inference arises of any intent to deprive *935 the owner permanently of the object, nor does even any inference arise of a “taking” i.e., an intent to usurp or negate the owner’s dominion.
In this case, T.H. testified he gave the swim trunks to Ms. Charles. The element or elements which the State was required to prove were a taking with intent to permanently deprive Wal-Mart of the swim trunks by T.H. The State’s case is based solely upon circumstantial evidence and the conflicting testimony by the State’s witnesses. There is no direct evidence as to this essential element of the crime charged. A similar issue arose in State v. Hunter, 09-1487 (La.App. 3 Cir. 6/2/10), 41 So.3d 546, which involved circumstantial evidence and conflicting testimony as to the element of constructive possession of cocaine. In Hunter, this court found the state failed to prove constructive possession beyond a reasonable doubt, explaining in pertinent part:
The crack cocaine at issue was found under a chair in the home of James Vertner. Thus, the State was required to prove the Defendant had constructive possession of the cocaine. There are several factors to consider when determining whether the Defendant had constructive possession of the crack cocaine which are set out below.

Knowledge

The crack cocaine at issue was found under a chair in which Michael Paige had been sitting. Michael testified that the crack was in his possession, he placed it in the back of the chair, and the | ^Defendant knew nothing about it. There was, however, testimony by Trooper Horton and Detective Dunn that they believed the Defendant and Michael were part of a drug organization. However, Michael denied any participation in the organization and the Defendant was not asked if he was part of the organization.

Relationship with the Person Found in Actual Possession

Neither Michael nor the Defendant actually possessed the crack cocaine when it was discovered by police. There is no evidence of a relationship between Michael and the Defendant other than testimony by Trooper Horton and Detective Dunn that they believed the Defendant and Michael were part of a drug organization.

Access to the Area

Vertner, the homeowner, testified that when police entered his home, the Defendant was in the kitchen by the sink and the ice box and he sat down at that time. Vertner did not testify where the Defendant sat. Babers, who was also inside the home when the Defendant entered, testified that the Defendant stood by the table, went toward the front door, and returned to the table. He testified that the Defendant never sat on the cooler.
Michael testified that the Defendant sat at the table and never sat on the cooler. The Defendant testified that he stood between the table and the love seat, which was across from the chair Michael sat in. He walked toward the front door then returned to the table, which was where he was when police entered the home. After police asked who got out of the vehicle, he sat in a chair. The Defendant did not indicate what chair he sat in.
Trooper Horton testified that the Defendant was standing by the chair when he entered the residence and later testified that he was sitting on a cooler next to the chair Michael sat in. Detective Henson also testified that the Defendant was sitting on the cooler next to the chair.

*936
Evidence of Recent Drug Use

There was no evidence presented regarding recent drug use by the Defendant.

Physical Proximity to the Drugs

The Defendant and Michael were in the same vehicle for a short period of time prior to the vehicle being stopped by police.
| ./Testimony of police put the Defendant next to the chair under which the crack cocaine was found. However, the testimony of other witnesses indicates the Defendant was not next to the chair. We are unaware of the size and layout of Vertner’s home. Additionally, Detective Henson testified that photographs are typically taken in cases such as this. However, no photos were taken in the case at bar.
We find the evidence regarding the Defendant’s proximity to the drugs is conflicting.

Evidence that the Area was Frequented by Drug Users

There was no testimony that Vert-ner’s home was frequented by drug users.
[[Image here]]
In the case at bar, the Defendant was in the company of an individual who admitted to possessing crack cocaine. However, there was no evidence the Defendant was aware that Michael possessed cocaine. Further, there was no evidence that the Defendant and Michael were in an area frequented by drug dealers.

PRINCIPAL

In its closing argument, the State asserted that Michael possessed the crack cocaine and the Defendant was a principal to the offense of possession with intent to distribute crack cocaine.
[[Image here]]
We find this case is most similar to [State v.] Brady, [97-1095 (La.App. 4 Cir. 2/3/99) ] 727 So.2d 1264, in which Brady had drugs in his pocket and the court • concluded that Howell did not have constructive possession of those pills. Further, although the State would have the jury believe that the Defendant and Michael were part of a drug organization, there was no testimony regarding surveillance that linked the Defendant to the drug organization as there was in [State v.] Lewis, [42,365 (La.App. 2 Cir. 9/19/07)] 965 So.2d 971. There was, however, a recorded conversation between the Defendant and Marvin Paige, but the two did not openly discuss drugs during that conversation. Thus, the State failed to present proof that the Defendant directly committed the act constituting the offense, aided and abetted in its commission, or directly or indirectly counseled or procured Michael to commit possession with intent to distribute crack cocaine.
For the reasons asserted herein, we find the State did not prove the Defendant was a principal to Michael’s possession with intent to distribute crack cocaine.
| «RESPONSIVE VERDICTS
“[W]hen a court finds that the evidence was not sufficient to support a verdict for the crime charged, the discharge of the defendant is neither necessary nor proper when the evidence supports a conviction of a lesser and included offense which is a legislatively authorized responsive verdict.” State v. Wright, 36,635, p. 12 (La.App. 2 Cir. 3/7/03), 840 So.2d 1271, 1279. The responsive verdicts to the crime of possession with intent to distribute crack cocaine are attempted possession with intent to distribute crack cocaine, possession of crack cocaine, attempted pos *937 session of crack cocaine, and not guilty. La.Code Crim.P. art. 814(49).
We find the State cannot prove the Defendant committed any of the responsive verdicts, as the State failed to prove the Defendant constructively possessed the crack cocaine or was a principal to Michael’s possession thereof. Therefore, the Defendant’s conviction is vacated and his sentence set aside.
Id. at 555-62.
T.H. denied taking the swim trunks with the intent to deprive Wal-Mart of them permanently. He believed Ms. Charles was going to buy him the swim trunks based upon what she told him at the store. He testified she had bought things for him in the past. T.H. denied seeing Ms. Charles put the swim trunks in her purse. T.H. testified he only became aware that Ms. Charles had not paid for the swim trunks after being called into the security office. No merchandise from the store was found on T.H.
Like the officers in Hunter, Hebert testified according to what she believed the actions of T.H. meant to her characterizing T.H.’s looking the other way as making him a lookout for store security aiding Ms. Charles in the theft of goods from Wal-Mart. Hebert testified that T.H. saw Ms. Charles conceal the swim shorts. Hebert viewed these alleged actions via closed caption television and testified as follows:
• Q. [The State] [W]hile watching the security camera, was this gentleman in a position to see the young lady placing the items in her purse?
A. [Ms. Hamilton]. Yes, he was.
|9Q. Did he make an effort to stop the concealment?
A. No, he did not.
• Q. [M]r. Hamilton, what was he doing when the young lady put it in her purse?
A. He was standing next to her. While she was placing merchandise inside of her purse, he was basically looking around, I guess, to see if anybody was—
Detective Gerard, who was watching T.H. and Ms. Charles on the same television monitor at the same time as Hebert, corroborated T.H.’s testimony that T.H. did not see Ms. Charles place the swim trunks in her purse. Detective Gerard was asked several times about whether T.H. saw Ms. Charles conceal the swim trunks in the purse, and each time he said T.H. was looking away or turned away from Ms. Charles when she concealed the item in her purse.
Other circumstantial evidence to support this essential element of the crime charged was whether or not T.H. was aware Ms. Charles exited the store without paying for the swim trunks. T.H. denied seeing Ms. Charles pass the checkout line. Hebert testified:
A. We continued to follow the individuals until they came up to the front of the store. After they passed all points of sale, entered the vestibule, we opened the door to the Loss Prevention office and Deputy Gerard asked the individuals to come in the office.
But, Gerard gave a very different account. He explained:

A. Once they started moving, we lost them off of that particular camera.

Q. Okay.
A. And then — I don’t remember if Rae-helle followed them from that point. I went to the door to wait for them to come to the exit point.
11 nDetective Gerard then explained that T.H. did not exit the store at the same time as Ms. Charles. According to Gerard, Ms. Charles exited first and Gerard stopped her at that time. Gerard testified *938 when he stopped T.H., and brought him into the security office, Ms. Charles was already in the office.
I believe the State failed to exclude the reasonable hypothesis of innocence that T.H. thought Ms. Charles was going to purchase the swim trunks and that he was unaware she secreted them in her purse to avoid paying for them. As in Hunter, the State presented conflicting evidence. Gerard and Hebert had differing accounts or characterizations of the concealment. Additionally, although there was general testimony that T.H. and Ms. Charles passed the checkout points, T.H.’s testimony that he was not with Ms. Charles when she passed the checkout line and failed to pay for the swim trunks was supported by Detective Gerard’s testimony. T.H.’s testimony that Ms. Charles offered to buy him the swim trunks, and that she had purchased things for him in the past, was un-rebutted by the State. Furthermore, there was no testimony that T.H. knew Ms. Charles planned to steal the shorts. The State failed to prove the charged offense, any lesser included offense, or that T.H. was guilty as a principal.
I also believe T.H. correctly asserts that the admission of Gerard and Hebert’s testimony without the video tape of what they say they viewed over the closed circuit TV was improper and violates his due process rights under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
In State v. Johnson, 30,078, (La.App. 2 Cir. 12/10/97), 704 So.2d 1269, writ denied, 98-382 (La.6/26/98), 719 So.2d 1054, the defendant, convicted of aggravated battery, argued on appeal the trial court committed error when it allowed testimony on the contents of an in-store surveillance videotape which was |n erased prior to trial. The state elicited testimony from three people who testified that on the night of the shooting, they, along with store owner Mr. Ahmed, viewed this videotape of defendant’s alleged activities. The videotape was inadvertently recorded over the following day and no longer existed. The court explained in pertinent part:
The admissibility of a relevant videotape is well settled as being largely within the discretion of the trial judge. Lafleur v. John Deere Co., 491 So.2d 624 (La.1986); United States Fidelity & Guaranty Co. v. Hi-Tower Concrete Pumping Service, 574 So.2d 424 (La. App. 2d Cir.), writs denied, 578 So.2d 136 (La.1991). The trial court must consider whether the videotape accurately depicts what it purports to represent, whether it tends to establish a fact of the proponent’s case and whether it will aid the jury’s understanding. Against those factors, the trial court must consider whether the videotape will unfairly prejudice or mislead the jury, confuse the issues or cause undue delay. The trial court may exclude the evidence if the factors favoring admission are substantially outweighed by the factors against admission. La.C.E. arts. 401-403; U.S. Fidelity v. Hi-Tower, supra.
Here, we must specifically decide the admissibility and relevancy of testimony concerning the contents of a lost document, i.e. the Key Station surveillance videotape. While La.C.E. art. 1002 requires the original document to prove the contents therein, under La.C.E. art. 1004(1), the original of a writing, recording or photograph is not always required to prove its contents, and other evidence of the contents of a writing, recording or photograph is admissible if all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith.
The “best-evidence” rule is to be applied sensibly and with reason. State v. Dilworth, 358 So.2d 1254 (La.1978); and *939 State v. Cody, 446 So.2d 1278 (La.App. 2d Cir.1984). Absent a showing of prejudice to the defendant, a conviction will not be reversed on the ground that the best evidence was not produced. State v. Moore, 419 So.2d 963 (La.1982); State v. Gaskin, 412 So.2d 1007 (La.1982); and State v. Coleman, 486 So.2d 995 (La.App. 2d Cir.1986). The “best evidence” rule does not mandate production of an original taped statement when testimony shows that the original is not available and there is no bad faith by the state. State v. McDonald, 387 So.2d 1116 (La.1980), cert. denied, 449 U.S. 957, 101 S.Ct. 366, 66 L.Ed.2d 222 (1980).
[[Image here]]

11¡Mr. Ahmed testified that the video tape of these events was inadvertently deleted when the tape was recorded over the next day.

[[Image here]]
The trial court' found “specifically that the tape was not intentionally or [sic] destroyed in bad faith.” Since the trial court did not find Mr. Ahmed in bad faith, this court’s holding in State v. Hayes, supra, necessitates the finding that the testimonies of these witnesses to the contents of the videotape were admissible.
Significantly, in this case, there is no showing that the video tape, the best evidence of what actually occurred, was either lost or destroyed. It was simply never produced despite Defendant’s efforts to get the tape. The video would have been material and relevant to resolve the conflicting testimony of Hebert and Gerard in determining whether or not T.H. had the intent to permanently deprive Wal-Mart of the swim trunks. Consequently, T.H. suffered prejudice by the video not being made available. His adjudication should be reversed and his disposition should be vacated. I must respectfully dissent from the majority’s decision.