BROWN, C.J.
*1034 Defendant, Jonathan M. Harrell, challenges his conviction and sentence for driving while intoxicated, third offense. He was sentenced to four years at hard labor, with the first year to be served without the benefit of probation, parole, or suspension of sentence. No fine was imposed. We affirm the conviction and sentence.
DISCUSSION
In the early afternoon, of April 23, 2016, Shreveport police officers responded to a one-vehicle accident at 831 River Road, Shreveport, Louisiana. The responding officers observed a sport utility vehicle ("SUV") lodged in the rear of the home at that address. Defendant was arrested at the scene, and on May 23, 2016, he was formally charged by bill of information with driving while intoxicated, third offense. An amended bill of information, maintaining the same charge but removing language regarding blood alcohol tests, was filed on April 19, 2017.
The trial began on April 19, 2017, but prior to calling witnesses, defense counsel objected to the admission of certain other crimes evidence. The bills of information listed two prior DWI convictions that were also third offenses. Counsel argued that these were not necessary for the state to prove its case and were highly prejudicial.[1] The trial court overruled defendant's objection.
Stacey Koelemay, defendant's then-girlfriend, testified that she was in the vehicle when defendant crashed it into the house at 831 River Road on April 23, 2016. She said that defendant was driving her to the grocery store when the two began to argue. Koelemay stated that defendant wanted to go to a local bar and drink rather than take her to the grocery store, which Koelemay refused to do. The argument escalated quickly, and defendant stated, "I am going to kill us." Defendant accelerated the SUV and drove towards a telephone pole; however, rather than hitting the pole, the vehicle struck the road's curb and was catapulted into a fence bordering the street. According to Koelemay, the SUV struck the fence, an air conditioner, a gas main, and, ultimately, the house. Defendant and Koelemay exited the vehicle, and defendant asked her to tell the police that she was driving because he feared being arrested.
When the police arrived, Koelemay and defendant were separated, and she initially claimed that she had been driving the SUV when it wrecked. Koelemay eventually admitted, however, that it was defendant who drove the vehicle into the house, and she suspected that he had been drinking prior to the accident.
On cross-examination, Koelemay testified that she smelled alcohol on defendant, but later stated that the smell might have already been in the vehicle because defendant frequently drinks in the SUV. She admitted to meeting with defendant's defense counsel in the year prior to the trial to aid in defendant's defense. Koelemay also testified that the SUV driven by defendant was owned by her friend, Casey Zecca, and that the vehicle's gas pedal *1035 would occasionally stick, which would force the SUV to accelerate.
Casey Zecca testified that she owned the SUV, a 2006 Dodge Durango. Zecca loaned the vehicle to Koelemay and stated that neither she nor any of her family members who drove the vehicle ever experienced gas pedal or brake malfunctions prior to loaning the vehicle to Koelemay. When Koelemay notified Zecca of the accident, Zecca went to the scene and arrived as two tow trucks were attempting to dislodge the SUV from inside the home. Zecca did not see defendant at the scene but took several photographs of the damaged vehicle and house; the photos were admitted into evidence at trial.
James Murray testified that he was standing in the front yard of his mother's house, located across the street from 831 River Road, when he heard an engine "rev" and saw a gray truck speeding down the road. The vehicle struck the curb and briefly became airborne before landing back on the road. It hit the curb again and became airborne once more, went over a four-foot fence, struck the top of the fence with its rear wheels, and crashed into the house at 831 River Road. Murray stated that a male with short hair and a scraggly beard was driving the vehicle, and a female with long brown hair was in the passenger's seat. At trial, Murray identified defendant as the driver. Murray added that the vehicle struck a gas main prior to hitting the house, and that he smelled gas.
Murray saw Koelemay exit the passenger side of the vehicle and run to a nearby driveway. Murray went to the driver's side of the vehicle and told defendant to get out of the car. Defendant appeared to be poking at or reaching for something in the vehicle's rear seat but eventually got out of the vehicle and threw a set of keys to Koelemay. According to Murray, defendant and Koelemay were beginning to walk away from the accident when a neighbor stopped them. During his testimony, Murray observed that the road had a very sharp curve that had previously caused several wrecks and at least one death. Lastly, Murray testified that an ice cream truck approached the scene shortly after the accident, and a neighbor asked the truck to block the road to keep traffic away from the accident.
Murray's wife, Flora Ann, also testified at trial and corroborated her husband's account of the accident, adding that she called 911. Flora Ann also identified defendant as the driver. A handwritten account of the accident by Flora Ann was admitted into evidence.
Corporal Josh Holland, an officer with the Shreveport Police Department, testified that he was dispatched to 831 River Road in response to the accident and encountered Koelemay and defendant upon arriving at the scene. Koelemay claimed that she was the driver and that she had been passing an ice cream truck in the road's sharp curve when the gas pedal got stuck and forced her off the road. When Cpl. Holland spoke to defendant and Koelemay, he smelled alcohol but could not initially determine from which person the smell was emanating.
Corporal Holland and a fellow officer separated defendant and Koelemay, with Cpl. Holland remaining with Koelemay. Cpl. Holland determined that the smell of alcohol was not originating from her. Cpl. Holland confronted Koelemay, who recanted her original statement and admitted that defendant was the driver. Cpl. Holland arrested defendant, informed him of his Miranda[2] rights, and placed him in a *1036 police car. Defendant denied driving the vehicle and claimed that Koelemay gave him a drink before the accident. Cpl. Holland testified that defendant smelled of alcohol. During Cpl. Holland's testimony, video footage captured from inside the police car was admitted into evidence and played for the jury.
Sergeant Pete D'Arcy of the Shreveport Police Department testified that he responded to the scene with his fellow officers and spoke to defendant. Sgt. D'Arcy detected a strong odor of alcohol coming from defendant and noted defendant's slurred speech and glassy eyes. Defendant refused to participate in a field sobriety test or have his blood drawn; a field sobriety form filled out by Sgt. D'Arcy noting defendant's refusal and with marks in the boxes indicating that defendant's speech was slurred, balance was unsure, and intoxication obvious was admitted into evidence.
Sergeant Danny Duddy, supervisor of the Shreveport Police Department's Crime Scene Investigation Unit, was accepted as an expert in fingerprint analysis at trial. Sgt. Duddy compared fingerprints from defendant's previous DWI third-offense convictions on October 18, 2005, and May 1, 2007, with fingerprints taken from defendant in open court. He concluded that defendant was the same person convicted in 2005 and 2007. Copies of the bills of information, fingerprints, and minutes from the prior convictions were admitted into evidence.[3] Defendant's fingerprint card taken at trial, was also admitted into evidence.
The state and defense rested their cases after Sgt. Duddy's testimony, and the jury returned a verdict of guilty as charged. No presentence investigation report was ordered.
Defendant filed motions for a post-verdict judgment of acquittal and for a new trial. The trial court denied these motions and proceeded with sentencing. Defendant was sentenced to serve four years at hard labor, with the first year to be served without the benefit of probation, parole, or suspension of sentence, and to run concurrently with any other sentence. No fine was imposed, and defendant was given credit for time served. Defendant filed a motion to reconsider sentence which was denied.
Sufficiency of the Evidence
Defendant argues that there was insufficient evidence to establish that he was intoxicated at the time of the accident. Rather, defendant argues that testimony provided by James Murray supports defendant's claim that the accident was caused by a mechanical defect in the vehicle's gas pedal and was compounded by the fact that the street contained a sharp curve that had previously caused numerous accidents and at least one death.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the case in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Tate , 01-1658 (La. 05/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford , 05-0477 (La. 02/22/06), 922 So.2d 517 ;
*1037 State v. Dotie , 43,819 (La. App. 2 Cir. 01/14/09), 1 So.3d 833, writ denied , 09-0310 (La. 11/06/09), 21 So.3d 297.
To convict a defendant of driving while intoxicated, the state need only prove that he was operating a vehicle and that he was under the influence of alcohol or drugs. La. R.S. 14:98 ; State v. Jiles , 47,366 (La. App. 2 Cir. 08/08/12), 104 So.3d 27, writ granted on other grounds , 12-2355 (La. 03/15/13), 109 So.3d 372. To convict a defendant of driving while intoxicated, third-offense, the state must also prove that the defendant had two prior DWI convictions. State v. Jiles, supra .
There is sufficient evidence to support defendant's conviction. Koelemay testified at trial that defendant was operating the vehicle when it crashed into the house at 831 River Road. Although the defense called into question Koelemay's reliability, her testimony was corroborated by the Murray couple. Both Murrays recalled the accident with complete clarity and stated that they saw a man, not a woman, driving the vehicle. Furthermore, the Murrays identified defendant in open court as the driver of the vehicle.
Defendant refused to submit to any field sobriety, breathalyzer, or blood tests. Some behavioral manifestations, independent of any scientific test, however, are sufficient to support a charge of driving while intoxicated. State v. McDonald , 33,013 (La. App. 2 Cir. 03/01/00), 754 So.2d 382. It is not necessary that a conviction of driving while intoxicated be based upon a blood or breath alcohol test, and the observations of an arresting officer may be sufficient to establish a defendant's guilt. State v. Jiles, supra . Intoxication is an observable condition about which a witness may testify. State v. Allen , 440 So.2d 1330 (La. 1983) ; State v. Blackburn , 37,918 (La. App. 2 Cir. 01/28/04), 865 So.2d 912. Furthermore, a defendant's refusal to submit to a breath test is admissible to support a conviction of driving while intoxicated. The weight of such a refusal is left to the trier of fact. La. R.S. 32:666(A) ; State v. Dugas , 252 La. 345, 211 So.2d 285 (1968), cert. denied , 393 U.S. 1048, 89 S.Ct. 679, 21 L.Ed.2d 691 (1969) ; State v. Henix , 46,396 (La. App. 2 Cir. 08/10/11), 73 So.3d 952.
Corporal Holland and Sgt. D'Arcy testified that they smelled alcohol on defendant, with Sgt. D'Arcy adding that defendant had slurred speech and glassy eyes. Both stated that, based on their professional experience, defendant was intoxicated. Further, the jury was permitted to take into account defendant's refusal to submit to any tests during deliberation. Also, defendant admitted to drinking prior to the accident. This admission and the officers' observations, coupled with the Murrays' testimony that defendant was driving the vehicle, supports the jury's verdict.
Other Crimes Evidence
Defendant was charged with DWI, third offense. The bill of information listed two prior DWI convictions for offenses that occurred in 2003 (conviction in 2003) and in 2006 (conviction in 2007). Those two prior convictions were also third offenses. Necessarily, those bills listed prior DWI convictions from 1993, 1994 and two from 2005. To prove the prior convictions, the ADA put the bills of information from those convictions (which had defendant's fingerprints on the back) into evidence.
La. C. Cr. P. art. 483 provides:
If it is necessary to allege a prior conviction in an indictment, it is sufficient to allege the name or nature of the offenses and the fact, date, and court of the conviction.
An indictment shall not contain an allegation of a prior conviction of the defendant *1038 unless such allegation is necessary to fully charge the offense.
Where an accused is charged as a second, third, or fourth DWI offender, the bill of information or indictment must allege the prior convictions. State v. Wiltcher , 41,981 (La. App. 2 Cir. 05/09/07), 956 So.2d 769 ; State v. Franklin , 461 So.2d 640 (La. App. 1 Cir. 1984). The prior DWI convictions used by the state in a repeat offender prosecution under La. R.S. 14:98 are essential matters of proof at trial. State v. Rolen , 95-0347 (La. 09/15/95), 662 So.2d 446 ; State v. Wiltcher, supra . Further, where there is a jury trial, the indictment charging the multiple offenses should be read to the jury. The prior offense or offenses must be proved as part of the state's case; otherwise the conviction will be set aside. State v. Franklin, supra .
The predicate bills of information were offered for the specific purpose of establishing that defendant has two prior convictions for driving while intoxicated, rendering a guilty verdict for driving while intoxicated, third offense , an appropriate outcome. During Sgt. Duddy's testimony, no attention was drawn to the older offenses listed on the predicate bills of information. Sgt. Duddy, after taking defendant's fingerprints in open court, only compared the fingerprint cards from the other two offenses and confirmed that all three sets of fingerprints came from defendant. The bills of information do not constitute inadmissible other crimes evidence.
Furthermore, the improper admission of other crimes evidence is subject to review for harmless error. State v. Johnson, 94-1379 (La. 11/27/95), 664 So.2d 94 ; State v. Fisher, 46,997 (La. App. 2 Cir. 02/29/12), 87 So.3d 189 ; State v. Parker , 42,311 (La. App. 2 Cir. 08/15/07), 963 So.2d 497, writ denied , 07-2053 (La. 03/07/08), 977 So.2d 896. Trial error is harmless where the verdict is "surely unattributable to the error." Sullivan v. Louisiana , 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) ; State v. Ingram , 29,172 (La. App. 2 Cir. 01/24/97), 688 So.2d 657, writ denied , 97-0566 (La. 09/05/97), 700 So.2d 505.
If the admission was error, it was surely harmless.
Excessive Sentence
Defendant argues that trial court erred in failing to address the factors under La. C. Cr. P. art. 894.1 prior to his sentencing, rendering his sentence unconstitutionally harsh and excessive.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, a sentence will not be set aside as excessive. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Boehm , 51,229 (La. App. 2 Cir. 04/05/17), 217 So.3d 596.
Whoever commits the crime of driving while intoxicated, third offense, shall be fined $2,000 and shall be imprisoned, with or without hard labor, for not less than one year nor more than five years. La. R.S. 14:98.3(A)(1). Except as provided in Paragraph (2) of this Subsection, at least one year of the sentence must be served without the benefit of probation, parole, or suspension of sentence.
In this case, the trial court did not order a presentence investigation report. However, the record shows this defendant's background. He had numerous DWIs from 1993-2016, and in the instant offense, he was with his girlfriend and intentionally put her life at risk, both of which factored into the sentencing decision.
The record must show that the trial court took cognizance of the criteria *1039 set forth in La. C. Cr. P. art. 894.1. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos , 419 So.2d 475 (La. 1982) ; State v. DeBerry , 50,501 (La. App. 2 Cir. 04/13/16), 194 So.3d 657, writ denied , 16-0959 (La. 05/01/17), 219 So.3d 332. We find the sentence imposed to be supported by the record.
Errors Patent
A review of the record reveals two errors patent. First, the trial court failed to impose a mandatory fine at sentencing. As previously noted, the penalty provision of La. R.S. 14:98.3(A)(1) in effect in 2016 provided that a person convicted of driving while intoxicated, third offense, shall be fined $2,000. Although the trial court's failure to impose a mandatory fine results in an illegally lenient sentence, this Court is not required to remand for imposition of a mandatory fine. State v. Bell , 51,312 (La. App. 2 Cir. 05/17/17), 222 So.3d 79 ; State v. Dock , 49,784 (La. App. 2 Cir. 06/03/15), 167 So.3d 1097.
This Court declines to impose the mandatory fine as defendant is not prejudiced, and no objection was made by the state at sentencing.
Second, the record shows that the trial court failed to observe the proper sentencing delays set forth in La. C. Cr. P. art. 873, by imposing the sentence less than 24 hours after denying defendant's motions for a new trial and for a post-verdict judgment of acquittal. La. C. Cr. P. art. 873 provides, in pertinent part:
If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
In State v. White , 404 So.2d 1202, 1204 (La. 1981), the Louisiana Supreme Court explained that the failure of a trial court to observe the delay, or obtain a waiver thereof, following the denial of a defendant's motion for a new trial may be harmless error.
In State v. White , supra , the court noted that the defendant had ample time to argue his motion for new trial, that there was a substantial time period from the date of the defendant's conviction to the date of sentencing, and that there were "no indications that defendant's sentence was hurriedly imposed without due consideration." Id. at 1204.
In the instant case, the trial court imposed defendant's sentence immediately after denying his motions for new trial and post-verdict judgment of acquittal. Although the trial court asked defense counsel whether he was prepared for sentencing, and he gave an affirmative response, there was no express waiver of the 24-hour sentencing delay by defendant. The error appears harmless as defendant does not complain of the error.[4]
CONCLUSION
For the foregoing reasons, defendant's conviction and sentence are affirmed.

This was the first time that defense counsel raised the issue of other crimes evidence.

Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Defense counsel reurged his original objection regarding the bills of information.

State v. Augustine , 555 So.2d 1331 (La. 1990) and State v. Kisack , 16-0797 (La. 10/18/17), 236 So.3d 1201, are distinguishable from the present case.