## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 23-742

**STATE OF LOUISIANA**

**VERSUS**

**JAMES D. FLEMONES**

**********

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR-2022-743
HONORABLE MARTHA A. O'NEAL, DISTRICT JUDGE

**********

**VAN H. KYZAR**
**JUDGE**

**********

Court composed of Van H. Kyzar, Guy E. Bradberry, and Wilbur L. Stiles, Judges.

**AFFIRMED;**
**REMANDED WITH INSTRUCTIONS.**

**Annette Roach**
**Louisiana Appellate Project**
**P.O. Box 6547**
**Lake Charles, LA 70606-6547**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **James D. Flemones**

**James D. Flemones**
**Beauregard Parish Jail**
**412 Bolivar Bishop Drive**
**DeRidder, LA 70634-5080**
**(318) 445-6476**
    **Pro Se**

**James R. Lestage**
**District Attorney**
**Thirty-Sixth Judicial District**
**124 South Steward Street**
**DeRidder, LA 70634**
**(337) 463-5578**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**KYZAR, Judge.**

Defendant appeals his conviction and sentence for operating a motor vehicle while intoxicated, fifth offense. For the reasons that follow, we affirm and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

Defendant, James D. Flemones, was charged by bill of information, filed on July 5, 2020, with the offense of Operating a Motor Vehicle While Intoxicated, Fifth Offense, in violation of La.R.S. 14:98 and La.R.S. 14:98.4. The bill of information charged the four predicate offenses supporting the charge, as follows:

> The District Attorney charges that on August 21, 2003, in the 14th Judicial District Court, Lake Charles, Louisiana, in the case entitled, "State of Louisiana versus James Flemones", Docket No. 6894-03, the defendant pled guilty to DWI, first offense.
>
> The District Attorney further charges that on December 17, 2003, in the 36th Judicial District Court, DeRidder, Louisiana, in the case entitled, "State of Louisiana versus James D. Flemones", Docket No. CR-652-2003, the defendant pled guilty to DWI, second offense.
>
> The District Attorney further charges that on September 6, 2006, in the 36th Judicial District Court, DeRidder, Louisiana, in the case entitled, "State of Louisiana versus James D. Flemones", Docket No. CR-944-2004, the defendant pled guilty to DWI, third offense.
>
> The District Attorney further charges that on January 13, 2012, in the 36th Judicial District Court, DeRidder, Louisiana, in the case entitled "State of Louisiana versus James D. Flemones", Docket No. CR-2011-580, the defendant pled guilty to DWI, fourth offense.

Defendant was arraigned and pled not guilty on July 7, 2022. His trial began March 15, 2023. Evidence presented during the trial showed that on October 10, 2021, Lauren Outlaw, who lived at 10042 Highway 190, Merryville, Louisiana, called 911 to report an accident that had occurred on the highway in front of her home. On hearing the crash, she and her husband observed the crash scene from their house. After her husband went to the scene of the crash, he told her to call 911. Mrs.

Outlaw testified that when she went to the crash site, she observed only one male. There was quite a bit of damage to the vehicle, and she observed beer cans scattered everywhere.

Mr. Outlaw testified that he and his wife heard the crash and that when he went to the accident scene, he observed Defendant walking around his wrecked truck, getting in and out of the vehicle. When asked if he observed any alcohol, he stated that he saw "cans on the road and all that[.]"

Amanda Morrison,[1] a former officer of the Merryville Police Department, responded to a report of a vehicle accident on Highway 190 west in Beauregard Parish. Officer Morrison described the accident as follows:

> It appears the vehicle - - the person was travelling towards DeRidder and it appears the vehicle had veered off into the opposite lane hitting the guardrail on the opposite side of the bridge. And that caused the vehicle to come back over and hit the opposite side - - the side he should have been on. And caused it to end up in a [sic] cross ways in the middle of the bridge.

Officer Morrison identified Defendant as the driver but stated that he did not admit to driving the truck or that he had been drinking. There were several beer cans scattered at the scene, some empty and others unopened, a cooler with ice, and a half-empty bottle of Crown Royal bourbon on the truck's passenger floorboard. When asked if Defendant smelled of alcohol, Officer Morrison replied, "He did smell of alcohol on his person." She stated that when asked initially if he was injured, Defendant responded "no." According to Officer Morrison, Defendant "mumbled inaudibly" when he was later asked if he was injured. She testified that she "never got a direct response after that until the ambulance arrived." She had called for an

---

[1] By the time of trial, Officer Morrison was employed by the DeRidder Police Department. Between the time of the offense and trial, she had married. At the time of the arrest, her maiden name was Pointer.

2

ambulance as a matter of practice for safety purposes. Eventually, Defendant, accompanied by the ambulance personnel, walked to the ambulance, and got into it on his own.

Chester Austin, III, a Louisiana State Trooper, testified that he responded to the scene of the crash after Officer Morrison. He testified that as he exited his vehicle, he noticed opened and unopened Budweiser cans on the ground, and he smelled alcohol. Defendant was not on the scene at the time, as he had been transported to the hospital. Trooper Austin then went to the hospital to question Defendant. He described his encounter with Defendant, as follows:

> As soon as I got into the room I noticed a very strong aroma of a known alcohol beverage, I could smell it all over as soon as you cracked the door. As soon as I go to talk to him all I hear is moaning, I can hear him very lightly under his breath. Once I asked where he was headed, he was headed to his sisters [sic]. Other than that he wasn't really giving me anything. He wasn't saying anything else, he just kind of was saying that over and over. It was just kind of a mumble.

Trooper Austin testified that prior to his arrival, the hospital had drawn blood from Defendant. When he learned this, he provided the hospital with a preservation letter, requesting that it not destroy Defendant's blood samples. A few days later, Trooper Austin obtained a search warrant for the blood samples and the hospital records pertaining to the blood alcohol test results. He testified that according to the records, Defendant's blood alcohol level was .212.

During the defense's case-in-chief, Trooper Austin explained that the State sent a vial of the blood received from the hospital to an outside lab for testing. He acknowledged that the results of that testing showed Defendant's blood alcohol content (BAC) as ".166 esc."[2]

---

[2] The witness was not asked nor did he offer any explanation as to the meaning of the initials "esc" in the results.

3

Jami Perkins, Beauregard Health System's Emergency Department Director, testified that Defendant was in fact treated by the hospital for possible injuries after he was transported there following the accident. He was not administered any narcotics but was given a CT scan. Defendant's blood was collected by Samantha Rubio, a phlebotomist and qualified medical technician at the hospital. Ms. Perkins testified that blood can be drawn to assess injuries but did not know if that was why Defendant's blood was drawn in this case. The State asked during direct examination if blood can also be drawn in order to determine what a person has ingested. Ms. Perkins replied, "Yes." She testified that according to the hospital's records, Defendant's blood alcohol level was 212.0 milligrams, the equivalent to a BAC of .212.

Lori Haymon, Beauregard Health System's Director of Medical Records, testified concerning Defendant's certified medical records. She verified that the records were provided to the State pursuant to a search warrant.

On March 16, 2023, at the close of the two-day trial, the twelve-person jury returned a unanimous verdict of guilty as charged. On May 24, 2023, Defendant was sentenced to serve twenty-three years at hard labor, without the benefit of parole, probation, or suspension of sentence, consecutive to any other sentence that he may have to serve. Additionally, Defendant was ordered to pay the mandatory $5,000.00 fine and $40.00 to the Thirty-Sixth Judicial District Court Public Defender's Office.

Defendant thereafter filed for an out-of-time appeal, which was granted. On appeal, his appellate counsel asserts two assignments of error:

1. Counsel for James Flemones failed to perform to the standard required by the Sixth Amendment to the United States Constitution when he failed to: 1) seek the suppression of the medical records of James Flemones, and in particular, blood test results within the records; 2) when he failed to object at trial to

4

the admission of James Flemones' medical records as well as the testimony of the trooper and a hospital employee as to the results of a blood test contained in the record; and 3) when he failed to specifically plead and argue that La. Evid. Code art. 510(C)(2)(d) is unconstitutional as it violates a patient's right to privacy of their medical records, the patient's right against self-incrimination, and amounts to an unlawful seizure in violation of the Fourth Amendment, without a compelling state interest justifying both the denial of the physician/patient privilege and the state's actions relative to the records.

2.     The sentence imposed by the trial court was constitutionally excessive, and a violation of the Eighth Amendment of the United States Constitution, and La. Const. Art. I, § 20, as it is nothing more than cruel and unusual punishment and, thus, excessive considering the facts of this case and this offender and especially considering that the entire sentence must be served without benefit of probation, parole, or suspension of sentence.

Defendant has also filed a pro se brief, wherein he sets out two additional assignments of error:

1.     Counsel for James D. Flemones failed to perform to the standard required by the Sixth Amendment to the United States Constitution when he failed to 1) object to Trooper Chester Austin's testimony of the seatbelt being fastened; 2) object to Trooper Chester Austin's testimony saying that James Flemones stated that he was heading to his sister's house at the time of the accident, which was not proven by body cam video; 3) failed to object to . . . when the warrant was actually issued in this matter for the blood samples and when the police department actually took custody of the blood samples; 4) failed to object to . . . testimony and Exhibit 6, which was not provided in Discovery to appellant or his counsel; 5) object to Trooper Chester Austin's testimony that James D. Flemones was faking that he was sleeping allowing [sic] and then playing portions of the body camera video, skipping through the video, not play [sic] the video in its entirety; [and]

2.     The Court erred and failed to perform to the standard required by the Sixth Amendment to the United States Constitution when 1) they [sic] provided instructions to all counsel of record as to what questions can be asked of witnesses and what answers a witness can provide; 2) the State was advised by the Court that they could not mention any previous DWI charges of James D. Flemones, but the Court still allowed the State to mention the charges in front of the jury; 3) allowed the State to discuss the previous DWI charges of James D. Flemones which severely prejudiced the jury

5

against him; 4) the Court utilized previous DWI charges of James D. Flemones that occurred 18 and 15 years ago to heighten his sentence; 5) the Court did not apply the 10 year cleansing period to 3 of James D. Flemones [sic] DWI charges that occurred longer than 10 years ago and clearly meets the cleansing criteria.

## DISCUSSION

*Ineffective Assistance of Counsel*

In his first counsel-assigned error and his pro se-assigned errors, Defendant asserts that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution.[3] We consider all of these claims together.

In *State v. Green*, 16-938, pp. 36–37 (La.App. 3 Cir. 7/19/17), 248 So.3d 360, 383–84 (alterations in original), *writ denied*, 17-1348 (La. 4/27/18), 239 So.3d 836, this court restated the standard for proving ineffective assistance of counsel:

> "The standard of review on a claim of ineffective assistance of counsel is deficiency in counsel's performance giving rise to a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."
>
> A criminal defendant is guaranteed the effective assistance of counsel. United States Sixth Amendment; La.Const. art. I, § 13. To establish a claim for ineffective assistance, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and, that counsel's professional errors resulted in prejudice to the extent that it undermined the functioning of the adversarial process and rendered the verdict suspect.
>
> A claim of ineffectiveness is generally relegated to post-conviction, unless the record permits definitive resolution on appeal. However, when the record is

---

[3] *See also* La.Const. art. 1, § 13.

6

> sufficient for review, this Court will reach the merits of complaints about counsel's performance and grant relief when appropriate.

*State v. Nargo*, 15-779, pp. 7-8 (La.App. 3 Cir. 6/1/16), 193 So.3d 1263, 1268 (citations omitted).

. . . .

More specifically, under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for a defendant to establish that he received ineffective assistance of counsel, he must show that (1) "counsel's representation fell below an objective standard of reasonableness" and that (2) "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." *Id.* at 687-88, 104 S.Ct. 2052. If the defendant fails to meet one of the criteria of the two-pronged test, the reviewing court is not required to address the other one. *State v. James*, 95-962 (La.App. 3 Cir. 2/14/96), 670 So.2d 461 (citing *State v. James*, 555 So.2d 519 (La.App. 4 Cir.1989), *writ denied*, 559 So.2d 1374 (La.1990)). "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the [second] ground of lack of sufficient prejudice, which [ ] will often be so, that course should be followed." *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

First, we conclude that the record on appeal is more than adequate for us to decide the merits of Defendant's ineffective assistance of counsel claims. The pertinent claims relate to specific legal and evidentiary issues that are suitable for redress on appeal rather than the questions of trial strategy or tactical decisions of counsel that are better suited for an evidentiary hearing before a trial court in a post-conviction relief hearing.

Here, Defendant's appellate counsel specifically argues that his trial counsel failed to provide effective assistance of counsel as guaranteed by the Sixth Amendment by failing to seek the suppression of his medical records, including the results of his blood alcohol tests, and for failing to object to the admission of that evidence. He also urges that his trial counsel failed to object to the testimony of the

7

two witnesses who testified regarding the results of his blood alcohol tests as the physician/patient privilege should have prohibited the disclosure of his medical records in the absence of his consent. He further argues that "to the extent an exception to the privilege exists, it is unconstitutional and not founded on a compelling state interest."

Defendant asserts that "had counsel properly objected to the disclosure and admission of the records, or properly contested the constitutionality of the exception to the privilege for blood alcohol concentration results, the information concerning his blood alcohol concentration would not have been admissible at trial[.]" He concludes that he was prejudiced by these errors as "the other evidence admitted at trial was insufficient to prove beyond a reasonable doubt that he was intoxicated at the time of the accident."

The State counters that no grounds existed by which a motion to suppress the blood evidence and test results would have succeeded. It further argues that the privilege against communication of a medical record afforded to a patient by La.Code Evid. art. 510 pertains to warrantless searches and that the records in this case, were, in fact, secured from the hospital via a warrant.[4] While couched somewhat differently from Defendant's argument, the State argues that the issue of the blood draw is separate and apart from that of the blood alcohol test results obtained from that blood draw, and both the blood samples and the test results were secured pursuant to a warrant. As to the blood draw, the State points out that "Defendant claims that '[t]he court made two assumptions in its ruling — first, that

---

[4] "[A]bsent the narrowly drawn exceptions permitting warrantless searches, we hold a warrant is required to conduct an investigatory search of medical and/or prescription records." *State v. Skinner*, 08-2522, p. 10 (La. 5/5/09), 10 So.3d 1212, 1218.

8

the blood test was ordered for diagnosis of a medical condition, and second, that Flemones had given consent for the blood draw.'" The State further points out that La.Code Evid. art. 510(C)(2)(d), which provides an exception to a privileged communication when a record concerns a test result for a blood alcohol level, is presumptively constitutional, and, in fact, is constitutional as the State has a compelling interest in apprehending and prosecuting alcohol-impaired drivers in order to protect the health, safety, and welfare of its citizens. As such, there was no basis for a challenge to the constitutionality of that provision.

We agree that based on the facts presented here, there were no grounds warranting the filing or granting of a motion to suppress the results of the blood alcohol tests. We first note that the State requested neither the blood draw nor the blood alcohol testing performed by the hospital. This was not a blood draw that resulted from a request by the State pursuant to the implied consent law, La.R.S 32:661. Trooper Austin first learned of the blood draw and the blood alcohol testing after he arrived at the hospital, which led him to procure a search warrant in order to obtain the blood samples and test results as provided by law.

The facts here are similar though clearer than those faced by the court in *State v. Fisher*, 628 So.2d 1136, 1140 (La.App. 1 Cir. 1993), *writ denied*, 94-226, 94-321 (La. 5/20/94), 637 So.2d 474, 476, where officers who arrested the defendant on drug charges first took him to the emergency room after he had swallowed a large amount of cocaine. While the officers had intended to take him to the police station following his arrest, they decided to take him to the emergency room out of concern for his safety because his breathing was labored and they were unfamiliar with the medical risks associated with the oral ingestion of a large amount of suspected cocaine. The officers were fully aware that they would be responsible if the

9

defendant became ill once he was in jail. They told the hospital what had occurred but did not order or direct the actions to be taken by the hospital. The hospital pumped the defendant's stomach, suctioning out the contents of his stomach. The State later obtained his stomach contents, and on testing, determined that it contained cocaine.[5]

The court in *Fisher* found no merit in the defendant's claims as to the denial of his motion to suppress the evidence of his stomach contents and the results of the testing thereon:

> Medical testing procedures have been held to constitute a search of the person. *State v. Carthan*, 377 So.2d 308, 311 (La.1979). The fourth amendment of the United States Constitution protects against unreasonable searches and seizures. However, the amendment is not intended to protect against private trespasses. *State v. Gentry*, 462 So.2d 624, 628 (La.1985). *See also State v. Revere*, 572 So.2d 117, 131 (La.App. 1st Cir.1990), *writ denied*, 581 So.2d 703 (La.1991). Louisiana courts have reached a similar conclusion under the Louisiana Constitution and have upheld the admission of items seized by private persons. *See State v. McCabe*, 383 So.2d 380 (La.1980); *State v. Hutchinson*, 349 So.2d 1252 (La.1977); *State v. Coleman*, 466 So.2d 68, 72 (La.App. 2nd Cir.), *writ denied*, 467 So.2d 542 (La.1985). Thus, the prohibitions of the United States and Louisiana Constitutions against illegal searches and seizures, and the corresponding exclusionary rule, are aimed at governmental conduct rather than the actions of private citizens operating independently of the government or its agents. *See Allen v. Louisiana State Board of Dentistry*, 543 So.2d 908, 911–912 (La.1989).

*Id.* at 1139–40.

In *State v. Marullo*, 05-1921, pp. 2–3 (La. 3/10/06), 923 So.2d 638, 640 (alterations in original), the supreme court held that blood draws by health care providers and testing thereon unrelated to police investigative actions do not implicate Fourth Amendment protections, stating the following:

---

[5] It was not reported whether a warrant was secured for the contents, and no issue as to such was addressed by the trial court.

In addition, the decision to subject defendant to a battery of medical tests, one in which defendant ultimately acquiesced, was not made by the police in an attempt to secure evidence of a crime, but by the treating physician who determined that defendant appeared too intoxicated to make a valid waiver of an examination conducted in his best medical interests. To the extent that the decision was made primarily for medical as opposed to investigative or punitive purposes, the tests did not constitute an unreasonable search under the Fourth Amendment or La. Const. art. I, § 5, although they encompassed extensive blood work which included tests for blood volatiles, *e.g.,* ethanol. *See United States v. Attson,* 900 F.2d 1427, 1430–33 (9th Cir.1990); *Turner v. State,* 258 Ark. 425, 527 S.W.2d 580, 587–88 (1975); *State v. Fisher,* 628 So.2d 1136, 1140–41 (La.App. 1st Cir.1993); *see also* 3 Wayne R. LaFave, *Search and Seizure,* § 5.4(c), p. 165 (3rd ed. 1996) ("[E]vidence of crime is sometimes inadvertently come by when a person is searched for some purpose not directly tied to the objective of detecting criminal activity. . . . If a reasonable and good faith search is made of a person for such a purpose [which may include aiding individuals who are in danger of physical harm], then the better view is that evidence of crime discovered thereby is admissible in court.")(footnotes omitted). Given their medical purposes, the tests did not implicate the defendant's statutory right to withhold consent as a matter of La.R.S. 32:666(A)(2); nor, in the present context, did they implicate the physician-patient privilege. *See State v. Berry,* 324 So.2d 822, 828 (La.1975)(in-custody physical examination of accused by state physician for limited purpose of making objective findings as to his physical condition is not protected by the doctor-patient privilege); La.C.E. art. 510(C)(2)(d)(excepting from health care provider-patient privilege "a record of the results of a test for blood alcohol level or drugs taken from a patient who is under arrest, or who was subsequently arrested for an offense related to the test."). The trial court therefore erred in granting the defendant's motion to suppress his statements made during the examination and the results from the testing done in the course of the in-custody physical examination.

Here, Defendant was not transported to the hospital at the request or demand of the State. He entered the ambulance of his own accord and was transported to the hospital, where blood was drawn from him by the hospital absent any request or order from the State. When Trooper Austin learned this, he secured a warrant for the blood samples and the test results. There was no warrantless search subject to Fourth Amendment protection and no basis for a motion to suppress this evidence. Accordingly, Defendant's claim that his counsel was ineffective for failing to file a

11

motion to suppress or to challenge the constitutionality of La.Code Evid. art. 510 (C)(2)(d) is without merit.

In his first pro se assigned error, Defendant asserts that his counsel failed to perform to the standard required by the Sixth Amendment when he failed to object to Trooper Austin's testimony stating that: (1) Defendant's seatbelt was unfastened; (2) Defendant said he was headed to his sister's house at the time of the accident; and (3) Defendant pretended he was sleeping while at the hospital, which testimony was not proven by the body cam video. We find no merit in this argument. Evidence of where Defendant was going at the time of the crash, whether he was wearing a seatbelt, and whether he was sleeping or feigning sleep at the hospital was not relevant to the issue of guilt or innocence. Louisiana Code of Evidence Article 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Counsel was not ineffective for failing to challenge the testimony concerning such irrelevant issues. Thus, Defendant cannot meet the first prong required by *Strickland* of proving that his trial counsel's inaction fell below any objective standard of reasonableness, nor has he demonstrated any reasonable probability that this would have changed the outcome of his trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).

In his next pro se argument, Defendant contends that his trial counsel was ineffective for failing to object to the introduction of the blood samples into evidence as they were obtained by Trooper Austen prior to the issuance of the search warrant. We also find no merit to this argument.

Defendant asserts that Trooper Austin took possession of Defendant's blood samples on October 10, 2021, at 10:25 p.m., before the search warrant was signed on October 14, 2021. He refers to paragraph six of Trooper Austin's report:

> Upon arrival to LSP-D I had spoken with the evidence custodian, who advised the LSP Lab would not be able to test the blood that was collected. The blood was placed into a BAC kit and dropped into the Troop D evidence locker until an order could be issued to destroy the samples. I then reviewed the medical records from Mr. Flemones, and discovered that his Ethyl Alcohol level was 212.0 H or BAC 0.212g%.

Defendant contends that this paragraph from the report supports his claim that Trooper Austin took possession of the blood samples before the warrant was signed. Thus, he contends that any and all information obtained from the blood samples was improper and should have been objected to and declared inadmissible.

Trooper Austin's report is dated October 11, 2021, a few days before the search warrant was signed on October 14, 2021. At first glance, it appears that everything in the report was written on October 11, 2021, making it seem as though Trooper Austin arrived at his office with the blood samples and reviewed Defendant's medical records before the search warrant was secured on October 14, 2021. It is clear from reading the report, however, that the report was not written in its entirety on October 11th. In the paragraph immediately preceding the paragraph set forth, Trooper Austin stated that he submitted his request for a search warrant on October 14, 2021, and received the signed warrant from the trial judge within minutes of his submission. Thus, it is clear that some of the report was written after Trooper Austin received the warrant. Furthermore, Trooper Austin specifically testified that he did not receive the "biological and medical reports" until after he submitted the search warrant to the hospital. During Trooper Austin's testimony, the following colloquy took place:

13

Q. I guess the question I'm trying to lead up to, Trooper is; [sic] did you take physical possession of the biological and medical reports before the search warrant was granted?

A. Are you asking did I grab this information before the warrant?

Q. Yes.

A. No.

Q. You did not take possession of the blood –

A. They wouldn't give it to me.

Q. Okay, until they got the warrant.

A. Correct. I have to submit it before they will actually give me that information.

There was nothing objectionable concerning this testimony and the issue of when the warrant was secured. Defendant cannot meet either prong of the required standard as to a claim of ineffective assistance of counsel on this basis.

While Defendant also makes the pro se argument that his trial counsel was ineffective for failing to object to Trooper Austin's body cam video, which was not provided to him during discovery, as well as the related testimony, he fails to present any argument or discussion on this issue in brief. Thus, this issue is considered abandoned. Uniform Rules—Courts of Appeal, Rule 2–12.4.(B)(4).

In his next pro se assigned error, Defendant asserts that the trial court erred when giving instructions to counsel for both sides that the trial was only going to be about the current DWI charge and not any past DWI offenses, but failed, thereafter, to uphold or enforce this instruction. He argues that the trial court allowed the State to advise the jurors and potential jurors that Defendant was charged with his fifth DWI and that this information prejudiced the jury against him as it painted a picture of him being a habitual offender. Further, he asserts that the dates and elapsed time

14

between his prior DWIs were not mentioned to the jurors, and had this information been shared with the jurors, they would have been able to conclude that there was a great amount of time between his DWIs. He asserts that his counsel also erred and was ineffective when he failed to object each time the State brought up his past DWIs. He contends that his counsel should have filed motions to suppress any mention of his past DWIs.

"The prior D.W.I. convictions used by the state in a repeat offender prosecution under La.R.S. 14:98 are essential matters of proof at trial." *State v. Rolen*, 95-347, p. 2 (La. 9/15/95), 662 So.2d 446, 447 (per curiam). Thus, it was necessary for the State to list Defendant's prior DWIs in the bill of information. La.Code Crim.P. art. 483. "Further, where there is a jury trial, the indictment charging the multiple offenses should be read to the jury. The prior offense or offenses must be proved as part of the state's case; otherwise the conviction will be set aside." *State v. Harrell*, 51,966, p. 9 (La.App. 2 Cir. 4/11/18), 247 So.3d 1030, 1038. Thus, it was not error for the jury to be informed about Defendant's prior DWI convictions.

Finally, Defendant contends the jury should have been informed of the dates of his prior DWIs and the time that had elapsed between each offense. We note, however, that the jury was informed of the dates of his prior DWIs and the time between those convictions when the bill of information was read to the jury.

For these reasons, Defendant's pro se assignments and his counsel's assigned error as to the ineffective assistance of his trial counsel lack merit.

*Excessive Sentence*

Defendant next asserts that the sentence imposed by the trial court was constitutionally excessive and a violation of the Eighth Amendment to the United

15

States Constitution and La.Const. art. 1, § 20 as it is nothing more than cruel and unusual punishment and, thus, is excessive. We note that Defendant did not orally move or file a motion to reconsider sentence in the trial court, and as such, he is precluded from objecting to the sentence on appeal. La.Code Crim.P. art. 881.1(E). However, in the interest of justice, we have chosen to review such an assignment as a bare claim of excessiveness. *State v. Patterson*, 09-199 (La.App. 3 Cir. 11/4/09), 21 So.3d 1119.

Pursuant to La.R.S. 14:98(A)(1)(b),[6] the crime of operating a vehicle while intoxicated occurs when "[t]he operator's blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood." The penalty for a fifth offense of operating a vehicle while intoxicated is found in La.R.S. 14:98.4(C), which provides:

> If the offender has previously received the benefit of parole, probation, or suspension of sentence on a conviction of a fourth or subsequent offense violation of R.S. 14:98, then on a subsequent conviction of a fourth or subsequent offense, notwithstanding any other provision of law to the contrary and regardless of whether the offense occurred before or after an earlier conviction, the offender shall be fined five thousand dollars and imprisoned at hard labor for not less than ten nor more than thirty years. No part of the sentence shall be imposed with benefit of parole, probation, or suspension of sentence, and no portion of the sentence shall be imposed concurrently with the remaining balance of any sentence to be served for a prior conviction for any offense.

In the present case, Defendant was sentenced to twenty-three years in the custody of the Louisiana Department of Corrections, without benefits. He was also ordered to pay the mandatory fine of $5,000.00.

---

[6] Defendant concedes in brief that this is the applicable sentencing provision as the predicate for no parole or suspension of sentence was established.

16

This court, in *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042–43 (alteration in original), *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, set forth the following standard to be used in reviewing excessive sentence claims:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00–0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

In *State v. Soileau*, 13-770, 13-771 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261, we applied the three-factor test from *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183, in reviewing an excessive sentencing claim. Therein, we stated, "in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes." *Id.* at 1005. We note that the trial court "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784, p. 2 (La. 5/31/96), 674 So.2d 957, 958 (per curiam), *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996). "While a comparison of sentences imposed for similar crimes" is helpful in determining whether a particular sentence is excessive, we recognize, first and

17

foremost, that sentences must be individualized to the particular offender and to the particular offense committed. *Soileau*, 153 So.3d at 1006.

Sentencing guidelines are provided to trial courts by La.Code Crim.P. art. 894.1(C), which further states that "[t]he court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence." However, "[t]he trial court need not refer to every aggravating and mitigating circumstance in order to comply with the article." *State v. Hopkins*, 96-1063, p. 6 (La.App. 3 Cir. 3/5/97), 692 So.2d 538, 541.

At the sentencing hearing on March 24, 2023, the trial court noted that Defendant had been convicted of operating a motor vehicle, fifth offense. It also recognized that Defendant was fifty-seven years of age and had been given a probated sentence on each of his four prior convictions, thus, disallowing probation, parole, or suspension of his sentence for this conviction. The trial court then imposed the twenty-three-year hard labor sentence and mandatory fine. As the penalty for the offense is imprisonment at hard labor for not less than ten nor more than thirty years, without the benefit of parole, probation, or suspension of sentence, Defendant was given only slightly more than a midrange sentence. The trial court directly considered the age of the offender and his prior criminal history as it related to this conviction.

We next consider other sentences imposed for similar crimes and similarly situated defendants. First in *State v. Robertson*, 53,970 (La.App. 2 Cir. 6/30/21), 322 So.3d 937, the defendant was sentenced to serve twenty years at hard labor for a fourth offense DWI. The defendant in that case was sixty-two years old and claimed that because of his age, the sentence imposed by the trial court amounted to a life sentence, which he claimed was disproportionate to his offense. The second circuit

18

found that the sentence was not excessive and that there was no abuse of the trial court's discretion considering the midrange sentence, the defendant's continued alcohol abuse, and his criminal record.

In *State v. Davis*, 52,517 (La.App. 2 Cir. 5/22/19), 273 So.3d 670, *writ denied*, 19-928 (La. 11/25/19), 283 So.3d 496, the defendant was also sentenced to twenty-three years at hard labor for a fourth offense DWI. The second circuit held that the sentence was not excessive.[7]

Considering Defendant's circumstances, the crime for which he was convicted, and the limitations imposed thereby, the sentence of twenty-three years is not excessive and was not an abuse of the trial court's discretion.

Defendant in his pro se brief also argues that the trial court improperly utilized his previous DWIs that had occurred fifteen and eighteen years prior, to heighten his sentence. He further argues that the trial court failed to apply the ten-year cleansing period to three of his prior DWIs that had occurred more than ten years before his current offense and clearly met the cleansing criteria. Although these issues fall outside of our bare excessiveness review, we will address them here for completeness.

We find no merit in Defendant's claim. The four predicate offenses were part of the elements necessary to support the conviction, as set out above. While defendant's lack of a recent criminal history and the non-violent nature of the crime charged may "weigh in favor of probation or a lesser sentence, the choice of sentences within the statutory range lies within the sound discretion of the trial judge,

---

[7] *See also State v. Swayzer*, 43,350 (La.App. 2 Cir. 8/13/08), 989 So.2d 267, *writ denied*, 08-2697 (La. 9/18/09), 17 So.3d 388, where a sentence of twenty years at hard labor for DWI, fourth offense, was found not to be excessive.

19

subject only to the constitutional prohibition against excessive sentences." *State v. Williams*, 412 So.2d 1327, 1328 (La.1982). Further, the "information upon which trial judges may draw in determining an appropriate sentence must be wide and varied, and not subject to the normal restrictions imposed in the guilt determination phase of the proceedings." *Id.* at nt.1 (citing *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079 (1949)).

We find no merit in Defendant's argument that the trial court erred in failing to apply the ten-year cleansing period to three of his DWIs that occurred more than ten years prior to his current offense. Specifically, Defendant asserts that two of his prior DWIs were committed eighteen years and a third DWI was committed fifteen years before his current DWI.

Louisiana Revised Statutes 14:98(C)(3) states the following regarding the cleansing period:

> For purposes of this Section, a prior conviction shall not include a conviction for an offense under this Section, a conviction for an offense under R.S. 14:39.1, or a conviction under the laws of any state or an ordinance of a municipality, town, or similar political subdivision of another state which prohibits the operation of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance while intoxicated, while impaired, or while under the influence of alcohol, drugs, or any controlled dangerous substance, or as otherwise provided by R.S. 13:1894.1, if committed more than ten years prior to the commission of the crime for which the defendant is being tried, and such conviction shall not be considered in the assessment of penalties in this Section. However, periods of time during which the offender was awaiting trial, under an order of attachment for failure to appear, or on probation or parole for an offense described in this Paragraph, or periods of time during which an offender was incarcerated in a penal institution in this or any other state for any offense, including an offense described in Paragraph (1) of this Subsection, shall be excluded in computing the ten-year period.

At the beginning of trial, and outside the jury's presence, the trial court held a hearing regarding the cleansing period and its application to Defendant's prior

convictions. Before going through each of Defendant's prior DWIs, the State explained that it could "barely find only one period where his cleansing would have started." Defendant committed his first DWI on September 24, 2002, and was convicted on August 21, 2003. He committed his second DWI on August 31, 2003, and was convicted on December 17, 2003. Defendant committed his third DWI on October 3, 2005, and was convicted on September 6, 2006. He committed a fourth DWI on June 12, 2011, and was convicted on January 13, 2012. Finally, Defendant committed his fifth DWI (the current offense) on October 10, 2021.

The only possible lapse of a ten-year period occurred between Defendant's fourth and fifth DWIs. As provided in La.R.S. 14:98(3), the time Defendant was awaiting trial, incarcerated, or on probation or parole is excluded in computing the ten-year period. Considering that Defendant committed the fourth DWI on June 12, 2011, was convicted seven months later on January 13, 2012, was sentenced to ten years at hard labor, three years without benefit of probation, parole, or suspension of sentence, on March 24, 2014, and committed his fifth DWI on October 10, 2021, the ten-year cleansing period did not lapse between his fourth and fifth DWIs. The trial court came to the same conclusion:

> The Court has made the following decisions based on the documents presented. First of all, the Court has made a determination that there is less than a year between the first and second DWI. There is approximately three years between the second and third DWI. Given the most leniency under any scenario that anyone chooses to argue between the third and the fourth, even between the conviction of the second DWI. Even if we were excluding probation, parole, anything like that or include that - - even if we included that, there is between the second and - - I'm sorry, the third and fourth DWI approximately - - let's see, I haven't figure [sic] that up, eight years. Then between forth [sic] DWI and now. The resentencing was March 24, 2014, and under the law, State versus Waydell, the time awaiting trial and the twelve months of probation in that case were not included in the cleansing period, and likewise they would not be included in this cleansing period, and I do not know when Mr. Flemones would have completed

21

his sentence in 2014. But regardless I can find no argument nor was there any affirmative defense offered that the fourth DWI and todays' [sic] DWI is [sic] not within the period. In other words, the Court finds it is within the ten-year period - - it is within the ten-year period, and therefore it's appropriate to be applied as a fifth DWI.

In *State v. Waddell*, 12-111 (La.App. 4 Cir. 10/24/12), 102 So.3d 1025, and

*State v. Easter*, 14-1630 (La.App. 1 Cir. 4/24/15), 170 So.3d 1051, *writ denied*, 15-

979 (La. 5/20/16), 191 So.3d 1063, *cert. denied*, 580 U.S. 853, 137 S.Ct. 119 (2016),

the courts held that the amended cleansing period in the statute applies even if the

predicate DWIs occurred prior to the amendment. The court in *Easter*, 170 So.3d at

1056 (footnote omitted), stated:

> As the defendant notes, the amendment of the statutory cleansing period then provided in La. R.S. 14:98(F)(2), by Act 640 of 2008, effectively enlarged the cleansing period. However, the Louisiana Supreme Court has held that enlarging a statutory cleansing period does not require an individual to defend past acts for which he has already been convicted and punished, but to measure his future conduct in light of the legislature's changing perception of significant social problems. *State v. Rolen*, 1995-0347 (La.9/15/95), 662 So.2d 446, 449. For purposes of analyzing the ex post facto implications of statutes increasing penalties for future crimes based on past crimes, "the relevant 'offense' is the current crime, not the predicate crime." *Rolen*, 662 So.2d at 448. Accordingly, the trial court's application of [sic] statutory cleansing period as amended in 2008 was appropriate although the defendant's predicates were committed before the amendment. In this case the mere subtraction of the defendant's probationary period of three years imposed when he pled guilty to third offense DWI on July 7, 2008 places the three predicate convictions well within the cleansing period without considering any other excludable time periods.

Thus, regardless of whether any of Defendant's prior convictions occurred

prior to the current version of La.R.S. 14:98, they were properly considered.

Consequently, Defendant's claim that the ten-year cleansing period was not

complied with, is without merit.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent. While the transcript reflects that in addition to the fine imposed, Defendant was ordered to pay $40.00 to the Thirty-Sixth Judicial District Public Defender's Office, the minutes of court do not reflect such. Where there is a discrepancy in the transcript and the minutes, the transcript prevails. *State v. Lynch*, 441 So.2d 732 (La.1983). Therefore, the case is remanded and the trial court is instructed to have the clerk amend the minutes of court for the sentencing to provide for the payment of $40.00 to the Thirty-Sixth Judicial District Public Defender's Office.

## DECREE

Defendant's conviction and sentence are affirmed, and the case is remanded to the trial court with instructions to amend the court minutes to reflect that Defendant is to pay $40.00 to the Thirty-Sixth Judicial District Public Defender's Office.

**AFFIRMED; REMANDED WITH INSTRUCTIONS.**

23